**June MEYER, Selma Pundyk, Agnes Healy, Dorothy Dubose, individually and on behalf of all other persons similarly situated, Plaintiffs,**

**and**

**United States Equal Employment Opportunity Commission, Plaintiff-Intervenor,**

**v.**

**MACMILLAN PUBLISHING CO., INC., A Corporation, Defendant.**

**No. 78 Civ. 2133(MEL).**

United States District Court, S. D. New York.

Sept. 23, 1982.

**412**

Samuel Stein, Douglas Scherer, New York City, for plaintiffs.

E. E. O. C., Gale Black, Trial Atty., Michael J. Connolly, Gen. Counsel, James N. Finney, Associate Gen. Counsel, Earl Harper, Jr., Asst. Gen. Counsel, Gwendolyn Young Reams, Supervisory Trial Atty., Washington, D. C., Epstein, Becker, Borsody & Green, P. C., New York City, for plaintiff-intervenor; Ronald M. Green, Gregory K. Hiestand, Philip M. Berkowitz, New York City, of counsel.

Melinda M. Sweet, Walter M. Volpi, New York City, for defendant.

LASKER, District Judge.

The background of this action is fully set forth in prior decisions, *see* 85 F.R.D. 149, 526 F.Supp. 213, 536 F.Supp. 791. Plaintiffs move pursuant to Fed.R.Civ.Pr. 23(a) and (b)(2) to certify a class consisting of:

"all women who were, are now, or will be employed at the defendant Macmillan Publishing Co., Inc.'s ['Macmillan'] corporate headquarters ('866') presently located at 866 Third Avenue, New York, New York or in any sales position located outside of '866,' and all women who applied, or would have applied for employment at '866' or in any sales positions located outside of '866,' but for Macmillan's allegedly discriminatory employment practices, and who have been, are, or will be adversely affected by the practices complained of herein at any time from 300 days prior to May 15, 1974 to the date on which this action is finally terminated."

Plaintiffs' Reply Brief in Support of Motion for Class Certification at 2.[1]

Macmillan's objections to class certification include general objections which relate to all potential class members and more specific objections as to non-866 employees only. Macmillan's primary general objection is that there is nothing of a systemic or class nature involved in this action because Macmillan does not discriminate against women. For example, Macmillan advises us as to the numbers and percentages of women employed in its various divisions. (Macmillan's Reply Memorandum at 9, 14, 15, 20, 21). Similarly, Macmillan urges that plaintiffs' class claims are "rendered moot by the permanent injunctive and other relief already granted" in prior consent decrees entered in other actions against Macmillan. (Macmillan's Memorandum at 38).[2] In addition, on the issues of commonality and typicality, Macmillan contends that the named plaintiffs' jobs are unique and therefore atypical; that professional employees such as the named plaintiffs do not have claims typical of clerical employees; that the employee-plaintiffs cannot represent unsuccessful applicants for employment; and that current employees may not represent future employees. On the question of adequacy of representation, Macmillan argues that counsel for plaintiffs are inadequate and that the proposed class is inherently in conflict because one form of relief sought is promotion, and not all employees can be promoted.

As to the non-866 employees, Macmillan contends that their claims are not typified by the claims of the named plaintiffs (who are all employed at 866) because all person-

nel decisions as to non-866 employees are made in the field, while decisions relating to 866 employees are made at headquarters. Furthermore, Macmillan argues that the 866 employees are not adequate representatives of the non-866 employees because there is a substantial conflict of interest between the two groups; to wit, that field experience is considered a prerequisite to advancement at the College Division of 866, that this requirement is favored by women in the field, and that the named plaintiffs have argued for the abolition of the requirement on the grounds that it is a pretext for sex discrimination.

The affidavits of the parties were inadequate to resolve the question whether or not the personnel decisions as to field employees are made autonomously by the regional directors. Accordingly, a hearing was held on that issue.

I. *General Objections to the Proposed Class*

A. *Commonality and Typicality*[3]

Much of Macmillan's voluminous brief is devoted to allegations concerning the merits of the case, including discussions of the numbers of women employed by Macmillan and the equal employment opportunities mandated by the two consent decrees entered in earlier litigation.

A brief consideration of the scope of the inquiry on a motion for class certification appears in order. A motion for class certification is not the occasion for a mini-hearing on the merits. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974): "We find

---

1. During the course of discovery and briefing of the class certification motion, plaintiffs modified the class originally designated in the complaint to exclude all non-866 employees except those in sales positions. (Letter of Douglas Scherer, counsel for plaintiffs, filed May 17, 1982).

2. The purported import of this latter point is somewhat difficult to discern. We understand Macmillan to mean that the fact that it has already been enjoined from discriminating against women is evidence that it does not discriminate against women. Plaintiffs, of

course, contend that Macmillan is engaging in discrimination *despite* the earlier injunctions. In any event, both sides' arguments go to the merits of the case.

3. The requirements of commonality and typicality are considered together because, as the Supreme Court has recently noted, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. v. Falcon,* —— U.S. ——, —— n. 13, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982).

nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." To the contrary,

> "Once plaintiffs have demonstrated . . . a reasonable basis for crediting the assertion that aggrieved individuals do exist in the broader class they propose, then it is inappropriate for this Court to attempt to resolve material factual disputes on a motion for class certification."

*Kuck v. Berkey Photo, Inc.,* 81 F.R.D. 736, 739 (S.D.N.Y. 1979) (Weinfield, J.).

The affidavits submitted by members of the proposed class provide a strong basis for "crediting the assertion that aggrieved individuals do exist" in the proposed class. For example, the affidavits contain numerous allegations as to men who, upon information and belief, were paid more than women who were at similar or higher levels (Affidavits of Susan Trowbridge, Jane Grossinger, Diane Fetta, Bernice Weber, Cheryl Willis Hudson, Miriam Hurewitz), men who were given swifter promotions than women with greater experience (Affidavits of Cheryl Willis Hudson, Miriam Hurewitz), and men who were hired at higher levels with less experience than similarly situated women (Affidavit of Helen Trowbridge Wallace). The contentions of the named plaintiffs, as disclosed in their answers to the class action interrogatories, are of the same nature. Moreover, the affidavits contain allegations that certain mechanisms instituted in compliance with the prior consent decrees (e.g., the "Hay" evaluations) are ignored by management or biased in implementation (Affidavits of Carole Owens, Bernice Weber, Rochelle Grant). We conclude that plaintiffs have provided sufficient evidence of the existence of a class as to whom there are common questions of law and fact.

■ As for Macmillan's more specific objections concerning commonality and typicality, we find them unpersuasive. First, the fact that the jobs performed by the named plaintiffs are, in some sense, unique, is not a bar to their being class representatives. If it were, no class of professional employees could ever be certified. *See, e.g., Lo Re v. Chase Manhattan Corp.,* 431 F.Supp. 189, 196–197 (S.D.N.Y. 1977) in which a class of women in "professional, managerial, and official positions" were certified:

> "The fact that . . . hiring and promotion decisions of the sort here hinge upon a variety of 'subjective factors' would be true of any case involving professional level employment; such factors cannot serve to immunize discriminatory practices in professional fields from attack on a class basis."

Moreover,

> "[i]t is not necessary that each and every issue be raised by each and every member of the class or class representatives."

*Vulcan Society v. Fire Dept. of City of White Plains,* 82 F.R.D. 379, 401 (S.D.N.Y. 1979).

■ Second, Macmillan's attempt to remove clerical employees from the class is not warranted. Plaintiffs' affidavits include several from clerical employees indicating that there are employees in clerical positions who share the grievances of the named plaintiffs. It also appears that there is a strong nexus between clerical and professional employment: movement from clerical to professional levels at Macmillan is not uncommon.

■ Third, the question whether employees complaining of discrimination in promotions may represent unsuccessful applicants complaining of discriminatory hiring practices has recently been addressed by the Supreme Court in *General Telephone Co. v. Falcon,* —— U.S. ——, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In *Falcon,* the Court concluded that, for the purposes of Rule 23, the claims of an employee-plaintiff ordinarily would *not* be typical of the claims of unsuccessful applicants. However, the Court continued:

> "Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of

both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes."

*Id.* at —— n. 15, 102 S.Ct. at 2371 n. 15. While we do not yet have the benefit of further elaboration concerning the meaning of "significant proof [of] . . . a general policy of discrimination," we think the affidavits submitted by plaintiffs meet that standard. The allegations made in the affidavits concern not only discrimination in promotions, but in all aspects of employment: salaries, titles, offices, and, although to a lesser extent, hiring. For the purposes of this motion, plaintiffs have made an adequate showing that the alleged discrimination "pervades" Macmillan as to all personnel decisions, *see General Telephone, supra,* at ——, 102 S.Ct. at 2371.

Finally, as to future employees, the point appears academic: "If plaintiffs establish their claim to injunctive relief, the resulting judgment will inure to the benefit of future as well as existing employees." *Kuck v. Berkey Photo Inc.,* 81 F.R.D. 736, 739 (S.D. N.Y. 1979) (Weinfield, J.)

#### B. *Adequacy*

■ Having observed plaintiffs' counsel over a period of time, we are satisfied that they are qualified to conduct this litigation. Macmillan's contention that a class of employees, all of whom are seeking promotions, is not certifiable on the grounds that the class members are or will be in conflict with each other as to these very promotions, though ingenuous, is without merit. Such a contention, if accepted, would bar all employment-related class actions in which promotions are sought by members of the class. The law is decidedly to the contrary.[4]

4. The cases in which promotions have been included in class action relief are legion: *see, e.g., United States v. City of Chicago,* 631 F.2d 469 (7th Cir. 1981), *Firefighters Institute v. City of St. Louis,* 616 F.2d 350, 360 (8th Cir. 1980), *E.E.O.C. v. American Tel. & Tel. Co.,* 419

### II.  *Objections to Non-866 Employees*

#### A. *Commonality and Typicality*

■ Macmillan argues that all personnel decisions with respect to the non-866 (or field) employees are made in the field by autonomous regional managers, and that the claims of 866 employees would therefore not be typical of non-866 employees. Plaintiffs argue that personnel decisions respecting field employees in sales positions[5] are closely controlled by management at 866, and that their discrimination claims are therefore typical and present common questions of law and fact.

The hearing testimony on this question was sharply contradictory. Plaintiffs produced four witnesses: former sales representatives from both the College and School Divisions, the former secretary to the Sales Director of the General Books Division, and the former national sales manager of the College Division. They testified consistently that 866 retains active control over personnel decisions as to field employees. The most persuasive testimony was that of Claude Robinson, who, as national sales manager for the College Division from 1976 to 1980, had been responsible for supervision and management of all field sales personnel in that division. He testified that personnel decisions such as hiring, termination and promotion of sales field employees were made only after consultation with him, and that his role in reviewing personnel decisions was an active one; for example, he often suggested further interviewing when displeased with the candidates presented by the field managers, or requested justification of an employee's continued tenure with the company when that employee's sales appeared low. In sum, his testimony, which we found credible, conveyed a sense of close scrutiny by 866 of field personnel actions. Plaintiff's other witnesses had more limited experience from

F.Supp. 1022, *aff'd* 556 F.2d 167, *cert. denied,* 438 U.S. 915, 98 S.Ct. 3145, 57 L.Ed.2d 1161.

5. Plaintiffs seek to certify only those non-866 employees, in sales positions, see Footnote 1, *supra.*

which to testify; however, their testimony was to the same effect as Robinson's, was based on their own personal experiences, and was also highly credible.

Macmillan's sole witness was Stephen Adams, who has been Macmillan's senior vice president of finance administration since June, 1980. He testified that his responsibilities include "all financial reporting, payroll, accounting, accounts receivable collection ... personnel record keeping, data processing and general service." (Hearing Transcript at 129). Prior to June, 1980, he was comptroller of the company, and his responsibilities were limited to financial matters. His testimony substantially conflicted with that of plaintiffs' witnesses. He stated that personnel decisions respecting all field sales personnel in all Macmillan divisions are made in the field by autonomous field managers. He stated that each division does have a national sales manager at 866 who is responsible for the field sales force, but that person merely "rubber stamps" the personnel decisions made in the field (Transcript at 146) because all such transactions require two signatures. (Transcript at 149).

We resolve the inconsistencies in testimony in favor of plaintiffs. Plaintiffs' witnesses had first-hand knowledge of the relationship between 866 and the field, either from the perspective of a field sales person or from that of the national sales manager's office. By contrast, Adams' responsibilities in the company are far broader than sales or even personnel. It was unclear whether his testimony was based on personal knowledge as to the relationship of the national sales managers to the regional managers because the critical questions put to him relating to the autonomy of field personnel were either posed or answered in terms of "to the best of your [or my] knowledge." See, e.g., Transcript at 135, 144, 146. He made no attempt to explain the fact that his testimony as to the role of the national sales managers directly contradicted the testimony of Claude Robinson, who had actually served in that position. Moreover, he did not purport to have any knowledge of how personnel matters were handled before his move from comptroller to finance administration in June, 1980. In addition, as plaintiffs pointed out, it is difficult to see why the national sales managers would be required to sign off on personnel decisions if their signatures are simply "rubber stamps," or, for that matter, what it is that the national sales managers do if decision-making in the field is entirely autonomous.

Accordingly, for the purposes of this motion, we find that plaintiffs have sufficiently established that personnel decisions as to sales personnel in the field are generally controlled by the policies and personnel at 866, and that the claims of the 866 employees are therefore typical of the field sales employees.

### B. *Adequacy*

Macmillan's argument concerning the conflict between College Division field sales representatives and 866 personnel runs as follows: College Division field sales representatives acquire certain editorial experience which is considered an advantage to them if they seek promotion at 866. Plaintiffs have contended that the use of College Division experience as a consideration in promotion is a pretext to avoid promoting women. Macmillan argues that there is a conflict between the College Division field women, who want to retain their promotional advantages, and the women at 866, who wish to preclude Macmillan from using the College Division field work as a promotional consideration.

Plaintiffs respond that the requirement of sales experience is only one manifestation of Macmillan's policy of sex discrimination, and that, so long as that general policy is in effect, all female employees have an interest in correcting it which overrides any interest in maintaining one particular aspect of it.

A proposed class representative is not disqualified on the basis of a potential conflict which relates to a comparatively incidental aspect of the claim. To the contrary, " 'only a conflict that goes to the very subject matter of the litigation will defeat a

party's claim of representative status.'" *Kuck v. Berkey Photo, Inc.,* 81 F.R.D. 736, 740 (S.D.N.Y. 1979), *quoting* 7 Wright & Miller, *Federal Practice & Procedure* § 1768, at 639 (1972). Plaintiffs' claim that the sales experience requirement for advancement in the College Division is a pretext is merely one item in a lengthy list of complaints, including unequal opportunities for promotion, unequal pay for equal work, and unequal conditions of employment. The purported conflict, which on the present record is purely hypothetical, by no means "goes to the very subject matter of the litigation." *Id.*

Plaintiffs' motion to certify the class is granted.

It is so ordered.