**Thomas BURKA, Eugene Avent, Frank Doe, Tracey Devlin and Fitzgerald Cumberbatch, Plaintiffs,**

**James Salazar, Plaintiff-Intervenor,**

v.

**NEW YORK CITY TRANSIT AUTHORITY, et al., Defendants.**

**No. 85 Civ. 5751 (GLG).**

United States District Court, S.D. New York.

June 16, 1986.

**598**

Legal Action Center of the City of New York, Inc., New York City, for plaintiffs; Margaret K. Brooks, Catherine H. O'Neill, Ellen M. Weber, of counsel.

Albert C. Cosenza, Vice President and General Counsel, New York City Transit Authority, Brooklyn, N.Y., for defendants; Gloria Colon, Eugene Freidus, Robin W. Weiner, of counsel.

Gladstein, Reif & Meginniss, Brooklyn, N.Y., for plaintiff-intervenor. James Reif, of counsel.

GOETTEL, District Judge:

Driven by growing drug use among millions of Americans and the seeming inability of law enforcement officials to curb it, many employers, both public and private, have begun to screen workers to detect the presence of drugs in their bodies.[1] The military, major corporations, federal agencies, and local governments are among those who test employees,[2] and the President's Commission on Organized Crime recently called for mandatory random drug testing for all government employees and for all employees of companies doing business with the government.[3]

With the rise in testing has come a concomitant concern that some or all drug testing may impair the statutory and constitutional rights of employees. Predictably, the battleground for resolution of the many issues raised by drug testing is the courts. Numerous suits, including this one, have been instituted in the state and federal courts challenging the legality of various drug screening programs.[4] The plaintiffs in this putative class action challenge the New York City Transit Authority's ("TA") comprehensive drug testing program as that program relates to testing for marijuana use.

---

1. See generally Noble, *Should Employers Be Able to Test for Drug Use?*, N.Y. Times, Apr. 17, 1986, at B7, col. 1.

2. See generally Stille, *Drug Testing: The scene is set for a dramatic legal collision between the rights of employers and workers*, Nat'l L.J., Apr. 7, 1986, at 1, 22–23.

3. *Id.* at 22–23.

4. *See, e.g., Division 241 Amalgamated Transit Union v. Suscy*, 538 F.2d 1264 (7th Cir.1976), *cert. denied*, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976) (challenge to blood and urine tests administered by the Chicago Transit Authority); *The Committee for GI Rights v. Callaway*, 518 F.2d 466 (D.C.Cir.1975) (challenge to

army's drug testing policy); *Jones v. McKenzie*, 628 F.Supp. 1500 (D.D.C.1986) (challenge to school system's program of surveilling employees for drug use); *Allen v. City of Marietta*, 601 F.Supp. 482 (N.D.Ga.1985) (challenge by employees at city's electrical plant to urinalysis tests); *Railway Labor Executives' Association v. Dole*, No. c–85–7958–Cal (challenge to drug testing of federal railroad workers); *Luck v. Southern Pacific Transportation Co.*, c–84–3–230–Cal (challenge to Southern Pacific Corporation's drug testing program); *Turner v. Fraternal Order of Police*, 500 A.2d 1005 (D.C.App.1985) (challenge to police department policy requiring urinalysis testing).

Before the Court is the plaintiffs' motion for class certification and plaintiff-intervenor James Salazar's motion to intervene. For the reasons stated below, the motion for class certification is denied without prejudice to its renewal, and the motion to intervene is granted.

## I. Background

The New York City Transit Authority is a public benefit corporation that operates transit facilities, including bus and subway systems in New York City. Defendants David L. Gunn, Robert F. Kiley, Brian Frohlinger, and Monica Benjamin are, respectively, the TA's President, Chairman, Assistant Vice President for Labor Relations, and Medical Director.

### A. The Drug Testing Policy

In 1983, the TA implemented a comprehensive drug screening policy that, *inter alia,* prohibited its employees from using marijuana at any time. The policy required TA employees to submit to drug testing in six circumstances: (1) following an extended absence or suspension, (2) as part of a routine, periodic physical examination, (3) as part of a physical examination for promotion, (4) when directed by a supervisor or manager following an incident that occurs while on duty, (5) at any time, if a controlled substance had been identified in a prior test, and (6) when a supervisor or manager has reason to believe that an employee is impaired as a result of drug use. Refusal to submit to testing resulted in immediate dismissal. Employees testing positive for marijuana could be dismissed, suspended, and/or required to undergo drug counseling. The penalties varied with the employee's length of service and service record.

In July 1985, the TA revised its policy, shortening from two years to one the period of service necessary to avoid mandatory dismissal and altering the counseling program. The revised policy also authorized blood testing of employees involved in a vehicular or train accident.

The TA maintains a policy of screening all applicants for TA jobs for the use of drugs, including marijuana. The TA requires applicants to submit urine samples for drug urinalysis tests as part of their pre-employment medical examinations, and refuses employment to all applicants who allegedly test positive for marijuana. The TA also refuses employment to all applicants who were disqualified or terminated by the TA for alleged marijuana use within a year of their application.

Prior to September 1984, the TA tested a single urine sample using the immunoassay urinalysis procedure. On October 1, 1984, the TA changed labs and revised its marijuana testing procedure. The TA now takes two urine samples. One sample is tested for marijuana using the enzyme multiplied immunoassay technique. Marijuana positive urine tests are confirmed by a different test.

### B. The Amended Complaint

Five named plaintiffs identified in the amended complaint ("the complaint") seek to challenge the TA's marijuana testing policy on behalf of separate subclasses of TA employees. Plaintiff Thomas Burka ("Burka") seeks to represent a subclass of persons who have been or will be subjected to drug screening for marijuana as part of a pre-employment physical examination. Burka was dismissed from his job as a track cleaner when he tested positive for marijuana in connection with his application for a position as a trackworker. The four other subclasses mirror four of the six categories of TA employees subject to testing under the TA's policy. Plaintiff Eugene Avent ("Avent"), who was suspended in December 1984, after his urine tested positive for marijuana during a periodic medical examination, seeks to represent a subclass of persons who have been or will be subjected to drug testing as part of a routine physical examination. Plaintiff Frank Doe ("Doe"), an assistant civil engineer, was denied a higher level job in another department, suspended for thirty days, and required to attend drug counsel-

ing, as a result of a marijuana positive urinalysis test. Doe seeks to represent a subclass of those who have been or will be tested in connection with a physical examination for promotion. Plaintiff Tracey Devlin ("Devlin") tested positive for marijuana when he returned to work in November 1984, after a five month suspension. Devlin, who was suspended for thirty days and required to attend drug counselling, seeks to represent persons subjected to a drug screen following an extended absence. Plaintiff Fitzgerald Cumberbatch ("Cumberbatch") was dismissed when his urine tested positive for marijuana after the token booth at which he was working was robbed by an armed assailant. Cumberbatch seeks to represent all those who have tested positive for marijuana following an in-service incident. Each plaintiff seeks to represent those TA employees who have been or will be denied employment or a promotion, suspended, required to undergo drug counseling, terminated, or otherwise penalized solely because of a marijuana positive urinalysis test.

Each of the five named plaintiffs purports to state nine separate claims for relief; six are asserted under federal law, and three are pendent state claims. The first and second claims respectively challenge the TA's marijuana testing policy as violative of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982) (the "Rehabilitation Act") and the Department of Transportation's regulations promulgated thereunder. 49 C.F.R. § 27.35 (1985). The plaintiffs also assert that the TA's marijuana testing policy violates their rights under the due process and equal protection clauses of the fourteenth amendment. The complaint further alleges that the urinalysis testing constitutes an unreasonable search and seizure in violation of the fourth amendment as incorporated in the due process clause of the fourteenth amendment. The final federal constitutional claim is that the marijuana testing policy impairs the plaintiffs' right to privacy. In addition to these federal claims, the complaint asserts that the testing policy discriminates against the plaintiffs in violation

of the New York State Human Rights Law, N.Y.Exec.L. §§ 296(1)(a), (McKinney 1982), that the policy violates the plaintiffs' rights under the due process and equal protection clauses of the New York State Constitution, N.Y. Const., art. 1, §§ 6 & 11, and violates their state constitutional right to be secure against unreasonable searches and seizures. N.Y. Const., art. 1, § 12.

The plaintiffs seek a declaration that the testing policy violates the above-noted constitutional and statutory provisions, and an injunction against further implementation of the policy. They also demand individualized relief for themselves and the members of the subclasses they represent including reinstatement, backpay, and expungement of any reference in the TA's records to a marijuana-positive urinalysis or its consequences.

**C. The Motions Before the Court**

The plaintiffs now move pursuant to Fed. R.Civ.P. 23(c) to certify this as a class action composed of the five subclasses noted above. The plaintiffs request that the Court notify all subclass members of the action upon certification. In addition, James Salazar, another TA employee suspended after a marijuana-positive urinalysis, moves to intervene as a named plaintiff in this action. The Court will take up Salazar's motion after it considers the motion for class certification.

**II. Discussion**

**A. Motion for Class Certification**

 The importance of class actions to our judicial system is now universally accepted. *See Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir.1968). We do not doubt that the class action device is an appropriate and efficient mechanism for addressing the plaintiffs' constitutional and statutory grievances. By its very nature, this is a class suit involving classwide wrongs. *Cf. East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977) ("Suits alleging racial or ethnic dis-

crimination are often by their very nature class suits, involving classwide wrongs."). "[C]areful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensable." *Id.* at 405, 97 S.Ct. at 1897. A court can only certify a class action if persuaded, "after a rigorous analysis, that the prerequisites of Rule 23 ... have been satisfied." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). When plaintiffs attempt to certify two or more subclasses pursuant to Fed.R.Civ.P. 23(c)(4),[5] each subclass and its respective representative "must independently meet the requirements for maintenance of a class action." 7A C. Wright & A. Miller, *Federal Practice and Procedure* at 191–92 (1972) [hereinafter *Wright & Miller* ]. This means that each subclass must satisfy all of the requirements of Rule 23(a) which permits certification

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition, each subclass must satisfy one of the requirements of Rule 23(b), in this case Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." Fed.R.Civ.P. 23(b)(2). A final prerequisite to certification of any subclass is a finding that the subclass representative is a member of the subclass that he seeks to represent. *East Texas Motor Freight, supra,* 431 U.S. at 403, 97 S.Ct. at 1896.

### 1. Rules 23(a)(3) & (4)

Because subsections (a)(3) and (a)(4) of Rule 23 pose an insurmountable hurdle to certification of the subclasses proposed by the plaintiffs, we believe it appropriate to first discuss the requirements of those subsections as they apply herein.

■ Rule 23(a)(4)'s requirement that the class representative fairly and adequately represent the class is twofold. First, the representative's "attorney [must be] qualified, experienced and generally able to conduct the proposed litigation," *Eisen v. Carlisle & Jacquelin, supra,* 391 F.2d at 562, and the litigants must not be involved in a collusive suit. *Id.* Neither infirmity suggests itself in this case. The plaintiffs' attorneys have competently and successfully prosecuted a number of class action suits. In addition, this is not a collusive suit; its obvious goal of this suit is to redress alleged constitutional wrongs.

Rule 23(a)(4)'s second requirement, "that the interest of the representative be coextensive with the interest of the entire class ... amounts to little more than [a restatement of Rule 23(a)(3)'s proscription] that the plaintiff's claim must be typical of those of the entire class...." *Eisen, supra,* 391 F.2d at 563. *See also General Telephone Co. of Southwest v. Falcon, supra,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13 ("[The commonality and typicality] requirements ... tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest."). The focus of the second element of Rule 23(a)(4) and of Rule 23(a)(3) "is whether it will be fair and constitutional to bind the members of the putative class to a decree fashioned in their absence by the named plaintiffs." *Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 487 (N.D.Ca.1978). The more similar the claims and defenses of the class and its representative, the more likely the representative will champion the interests of the class.

---

**5.** That rule states, "When appropriate ... (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." Fed.R.Civ.P. 24(c)(4).

■ The factual and legal claims of the class and of the representative need not be identical. *Wilder v. Bernstein*, 499 F.Supp. 980, 992 (S.D.N.Y.1980); 7 *Wright & Miller, supra*, § 1769. But class treatment will be foreclosed if the representative's legal and factual positions are " 'markedly different' " from those of other class members, *Wofford, supra*, 78 F.R.D. at 489 (quoting 7 *Wright & Miller, supra*, § 1764 (Supp.1977), and when those differences go "to the very subject matter of the litigation." *Meyer v. Macmillan Publishing Co.*, 95 F.R.D. 411, 416–17 (S.D.N.Y. 1982) (quoting *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736, 740 (S.D.N.Y.1979) (quoting 7 *Wright & Miller, supra*, § 1768 at 639)).

■ A careful examination of the complaint reveals a fundamental conflict between two groups of individuals whom each subclass member purports to represent: those who deny marijuana use during their tenure at the TA [hereinafter "nonusers"] and those whose off-the-job use allegedly does not impair their on-the-job performance [hereinafter "users"]. The conflict arises because, although each named plaintiff purports to raise every claim in the complaint on behalf of his subclass, some of the claims are best asserted by users, other by non-users. Thus, in the case of every subclass, a non-user representative will not fairly and adequately represent the claims of user class members and vice versa. The absence of adequate representation necessitates denying the plaintiffs' motion for certification of the five subclasses proposed in the complaint.

The federal claims in the complaint fit within three categories: (1) claims best asserted by acknowledged users of marijuana; (2) a claim under which several legal theories may be asserted, some of which apply to users and others to nonusers; and (3) a claim applicable to users and nonusers alike. Within the first category are the Rehabilitation Act, equal protection,

and privacy challenges to the TA's policy. The Rehabilitation Act protects "handicapped" individuals. In this case, the plaintiffs claim that they are handicapped within the meaning of the Act because the defendants regard them as physically or mentally impaired.[6] *See* 29 U.S.C. § 706(7)(B) (1982). Acknowledged users are likely to focus on this claim. Although non-users may assert a claim phrased in these terms, their emphasis will be elsewhere. One who denies marijuana use is unlikely to press the claim that he is, or is regarded as, a drug abuser.

With respect to the equal protection claim, the issue is more than a question of emphasis. According to the complaint, "By disciplining and disqualifying plaintiffs and members of each subclass for marijuana use at any time rather than at times that would impair job performance, and on the basis of tests that do not prove impairment, and by summarily dismissing persons with less that [sic] one or two years service for marijuana-positive test results, defendants have afforded plaintiffs less protection than other disabled persons such as alcohol users who are deemed unable to perform job functions in violation of the Equal Protection Clause...." Complaint ¶ 62. By its terms, this claim applies exclusively to acknowledged users. Non-users are not part of the group that is receiving the allegedly unequal treatment. As put forth in the complaint, the privacy claim also applies exclusively to acknowledged users. According to the complaint, "[b]y prohibiting plaintiffs and members of each class from using marijuana at any time including off-duty hours and by disciplining and disqualifying persons who, if accurately tested positive for marijuana, used marijuana off-duty, defendants have violated plaintiffs' constitutional right to privacy." Complaint ¶ 64.

The due process claim rests on the proposition that the testing policy is irrational in two respects: first, that the tests do not

---

**6.** We need not now consider the viability of this somewhat novel claim. *See Meyer v. Macmillan Publishing Co.*, 95 F.R.D. 411, 414 (S.D.N.Y. 1982) (motion for class certification not an occasion for hearing on merits).

measure on-the-job impairment and, second, that they unfairly stigmatize as drug abusers those tested positive for marijuana. Only acknowledged users are likely to couch their claims in terms of the inability of the tests to measure impairment. Although both non-users and users can assert the stigmatization argument, non-users will deemphasize this aspect of the due process claim. Non-users will instead challenge the accuracy and reliability of the tests, a challenge that is anathema to acknowledged users.

The fourth amendment claim alleges, *inter alia*, that the drug tests constitute a search and seizure without probable cause. Both users and non-users will wish to assert this aspect of the fourth amendment claim.[7] To the extent that the complaint asserts that "by implementing a drug procedure that does not establish impairment of ability to perform job functions, defendants have violated plaintiffs' right to be secure from unreasonable searches and seizures," Complaint ¶ 63, it mirrors the first aspect of the due process claim. Although the complaint does not spell out the pendent state claims, the Court assumes that similar theories underly the plaintiffs' federal and state claims.

This broad panoply of federal and state claims dooms the certification of the subclasses delineated in the complaint and sought to be certified on this motion. Each subclass contains both acknowledged users of marijuana and those who deny any use during their tenure at the TA. Neither group asserts claims typical of the other. Non-users will focus their challenge on the TA's right to test without probable cause and the accuracy and reliability of the tests. Their attention to the complaint's equal protection, Rehabilitation Act, and privacy claims will be peripheral at best. Acknowledged marijuana users, on the other hand, will trumpet the claims that non-users are likely to ignore. Although users and non-users will raise some similar claims, by and large, each group's claims are atypical of the other's.

No class representative, whether user or non-user, can adequately represent the claims of all members of his proposed subclass. Thus, for example, an acknowledged marijuana user is unlikely to fairly and vigorously represent non-users in whose claims the user takes little interest. The plaintiffs acknowledge as much in their reply. There, they state that the claims of Cumberbatch, an acknowledged user, "are directly coextensive with those [whose off-the-job use of marijuana does not affect job performance] and are, therefore, typical of *some* putative class members." Plaintiffs' Response to Defendants' Opposition to Class Action Certification at 16 (emphasis added). Conspicuously absent is any allegation that Cumberbatch's claims are typical of all class members.

Since the conflict among the various subclass members goes to the heart of the legal issues in this case, to certify subclasses composed of both users and non-users in this action would be both unfair and improper. This conflict does not, however, doom all efforts in this case to certify a class or several subclasses.

Class certification "is essentially an exercise of discretion by the district court." *Lamphere v. Brown University*, 553 F.2d 714, 719 (1st Cir.1977). The discretion inherent in the Court's power to determine whether a class action may be maintained necessarily requires equally broad discretion in determining, on the motion of a party or *sua sponte*, whether to create subclasses pursuant to Fed.R.Civ.P. 23(c)(4)(B). *See supra* note 4; *Marcello v. Regan*, 574 F.Supp. 586, 591–92 (D.R.I. 1983) (citing *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1129 n. 38 (7th Cir.), *cert. denied sub nom. General Motors Corp. v. Oswald*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979); and *Geraghty v. United States Parole Commission*, 579 F.2d 238, 253 (3d

---

**7.** There may, however, be a distinction between the fourth amendment claims of those tested in connection with a routine physical and those tested in other circumstances. The plaintiffs' proposal for subclasses appears to address this distinction.

Cir.1978), *vacated on other grounds,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). In order to avoid the potential conflicts that threaten to impair the representation of all class members, the Court deems a further division of the proposed subclasses essential. At a minimum, the plaintiffs must separate those who acknowledge using marijuana during their tenure with the TA from those who deny such use. *Cf. Monroe v. Bombard,* 422 F.Supp. 211, 218–19 (S.D.N.Y.1976) (certifying separate subclasses of Sunni Muslims and of inmates with skin condition in class action challenging prison's no-beard rule).

Assuming that the plaintiffs wish to split each of the proposed subclasses into two, and assuming that the plaintiffs wish the five named plaintiffs to represent the revised subclasses to which they belong, five subclasses are left unrepresented. Certification of those unrepresented subclasses must await designation of adequate representatives and satisfaction of Rule 23's other requirements. At this time, we can, however, consider the defendants' challenges to the adequacy of each of the named plaintiffs.

### 2. Challenges to the Subclass Representatives

With the exception of Cumberbatch, all of the named plaintiffs deny having used marijuana at any time during their tenure at the TA. Cumberbatch, on the other hand, admits to ingesting marijuana approximately one week before the inservice incident noted above. The mandatory division of Cumberbatch's subclass has mooted the plaintiff's challenge to Cumberbatch's ability to adequately represent non-users. According to the Court's directive, Cumberbatch can only represent acknowledged users.

■ The defendants also challenge plaintiff Doe, asserting that he is not a member of the subclass of those seeking promotions that he purports to represent. The defendants contend that when Doe applied for the position of associate staff analyst, he applied for a new appointment, not for a promotion. Such nitpicking will not sway

this Court. Instead, in the exercise of our discretion to shape subclasses, we will define any pre-promotion subclass to comprise those, including Doe, tested in connection with an application for an appointment to a higher level position in the same or a different department of the TA.

The defendants also challenge Doe, Devlin, and Avent because their stories are atypical. Each of these plaintiffs depicts his test as sloppy and inaccurate. For example, both Devlin and Avent testified at deposition to urinating into a pitcher and then filling the test tubes with the pitcher, instead of urinating into the test tubes and catching overflow with the pitcher. Such unusual circumstances may well typify the various subclasses of non-users who will challenge the reliability of the testing procedures. If, in fact, the named plaintiffs concentrate on their unique fact patterns, their efforts will accrue to the benefit of many subclass members.

The defendants' assertion regarding the atypicality of the named plaintiff's factual contentions is not unlike that rejected in *Kronfeld v. Trans World Airline, Inc.,* 104 F.R.D. 50 (S.D.N.Y.1984). The plaintiff in that securities class action purchased shares of stock on his father's recommendation. The court rejected the defendant's contention that the plaintiff's reliance on his father made his claim atypical of the class's claims. "Reliance on third parties such as investment counselors or knowledgeable family members is likely to be typical, rather than atypical, of the circumstances under which a substantial number of class members purchased their stock," stated the court. *Id.* at 53.

■ To the extent that, in this case, the representatives' factual allegations of unreliable and inaccurate testing are unique, they will not harm those subclass members who do not assert the same, unique facts.

There are diverse issues of fact in all class actions. The individual members of a class will invariably reach an adversary posture with the defendant in different ways. But Rule 23(a)(3) does not require

that the factual background of the named plaintiff's case be identical with that of other members of the class, but that the disputed issue occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of their purported class. *Cottrell v. Virginia Electric & Power Co.,* 62 F.R.D. 516, 520 (E.D.Va.1974), *quoted in Wilder v. Bernstein,* 499 F.Supp. 980, 992 (S.D.N.Y.1980). All of the non-user subclass members challenge the accuracy and reliability of the testing procedures. Although specific objections may differ, the reliability of the test is equally important to each subclass member.[8] The uniqueness of the named plaintiffs' factual accounts does not justify denying them representative status.

Both Doe and Devlin pleaded *nolo contendre* to charges of marijuana use. According to the defendants, those pleas bar Doe and Devlin from challenging the reliability of the testing procedures, a challenge that is central to the claims of the non-user subclasses. Judge Renfrew spurned a similar argument in *Wofford v. Safeway Stores, Inc., supra,* 78 F.R.D. 460. The defendant in that case challenged the class representative because she had lost an arbitration proceeding raising issues central to the claims of the class she purported to represent. Judge Renfrew rejected the defendant's contention that the loss barred her claim, stating,

A federal court must consider the claim *de novo,* and although the arbitral decision is admissible in evidence, the weight to be accorded it depends on a variety of factors. Review of those factors and appropriate weighting of the arbitral decision is of course an issue unique to [the named plaintiff's] claim. But the Court regards it as a collateral one, similar to evidentiary disputes that may arise in the proof of any particular claim. Thus, [the named plaintiff] cannot be barred from representing a class on this ground.

*Id.* at 489. A plea of *nolo contendre,* like an adverse arbitration finding, does not bind the named plaintiffs in this proceeding and will not significantly detract from the quality of their representation. Such a plea should not vindicate a challenge to Doe or Devlin's status as subclass representative.

Sound policy counsels this result. Doe and Devlin pleaded *nolo contendre* in order to avoid outright dismissal. An individual should not have to endure a dismissal in order to withstand a challenge to the adequacy of his representation.

 It is pure speculation to assume that one who pleads *nolo contendre* is any less inclined to challenge the accuracy of his test than one who does not so plead. Moreover, we do not believe it appropriate to gauge the efficacy of the named plaintiffs' pleas at this juncture. That is better left to trial. The motion for class certification is not an occasion for a hearing on the merits. *Meyer v. Macmillan Publishing Co.,* 95 F.R.D. 411, 414 (S.D.N.Y.1982). Doe and Devlin's *nolo contendre* pleas do not, therefore, disqualify them as class representatives.

 Avent is also challenged as an adequate representative because he accepted a suspension without a hearing. The defendants maintain that Avent's decision to forego a hearing bars his challenge to the reliability of the testing procedures. That argument fails for the same reasons as the above-noted challenge to Doe and Devlin's representation. The defendants further assert that Avent is not an adequate representative because he professed ignorance of his right to appeal his marijuana-positive urinalysis. Here, the defendants miss the mark completely. The defendants assume that Avent is raising a procedural due process claim that is not typical or common to the members of his subclass. However, the complaint contains no procedural due process challenge to the TA's appeals procedure. Thus, Avent makes no such claim.

---

**8.** The defendants question the credibility of the various named plaintiffs' testimony about the circumstances of their urinalysis. Such challenges to credibility are inevitable and will not, in our view, detract from the adequacy of representation provided by the named plaintiffs.

■ Burka is challenged because of an alleged inconsistency between his statements at deposition and a statement in the complaint. At his deposition, Burka admitted using marijuana as a teenager. Burka's admission is not inconsistent with the statement in the complaint that "Burka does not use marijuana and has not used marijuana throughout his tenure as a TA employee. To his knowledge Burka did not use or ingest marijuana prior to his January 7, 1985 urinalysis test." Complaint ¶ 45(G). Neither the first nor second sentence precludes use as a teenager. The alleged inconsistency simply does not exist.

■ A better ground upon which to challenge Burka is his apparent acceptance of the accuracy of his marijuana-positive urinalysis. Burka contends that he tested positive not because of unreliable testing procedures, but because, prior to his test, he entered a subway car filled with marijuana smoke. Although Burka will not challenge the reliability of the tests, his fourth amendment and due process claims will, in all other respects, mirror those of the subclass that he represents. In addition, his claim that the tests do not measure personal consumption of marijuana is common to all members of his subclass.

Thus, the five proposed subclass representatives each satisfies the requirements of Fed.R.Civ.P. 23(a)(3) & (4).

### 3. Other Requisites to Class Certification

Each proposed subclass, as redefined by the Court, easily fulfills the requirements of Rules 23(a)(2) and 23(b)(2), which, respectively, demand that questions of law or fact be common to the class and that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

■ Each subclass raises common questions of law with respect to the constitutionality of the TA's drug testing policy. Thus, the requirements of section 23(a)(2) are satisfied. Both prongs of Rule 23(b)(2) are satisfied as well. A party that has established a regulatory scheme common to all class members, like the TA's drug testing policy, is deemed to have acted on grounds generally applicable to the class. 7A *Wright & Miller, supra,* 1775, at 19–20 (and citations therein). Declaratory and injunctive relief enjoining the further application and implementation of this policy is appropriate to remedy any improprieties in the scheme.[9]

■ We are left to consider whether the proposed subclasses are "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Several hundred TA employees have been penalized as the result of marijuana positive drug screens. In fact, the defendant conceded that the five subclasses proposed by the plaintiffs were too numerous for joinder. Thus, at least as to any non-user subclasses, there is little doubt that such subclasses meet the requirements of Rule 23(a)(1). However, we will refrain from finally determining the question of numerosity until all parties have had an opportunity to address the redefined subclasses. This, in turn, forecloses certification of any of the subclasses delineated herein. Of course, subclasses for which adequate representatives have not been designated, could not be certified in any event.

### B. Motion to Intervene

Only the motion to intervene of James Salazar ("Salazar"), a bus driver for the TA, remains for consideration. In November 1984, Salazar, who denies ever having used marijuana, was suspended without pay after a periodic medical examination when his urine tested positive for marijuana. At the conclusion of Salazar's disciplinary hearing, the hearing referee sustained

---

**9.** A prayer for backpay is not fatal to 23(b)(2) certification, 7A *Wright & Miller, supra,* at 22, since backpay is a form of equitable relief. *Franks v. Bowman Transportation Co.,* 495 F.2d 398, 406 (5th Cir.), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974).

the charge of marijuana use and recommended a 30–day suspension and a final warning. Salazar's appeal of that ruling is now pending. Salazar has been informed that the finding of marijuana use will not be overturned but that the length of the suspension may be reduced.

Salazar originally moved to intervene as a representative of the class of those tested in connection with a periodic physical examination. Having mandated a division of the proposed subclasses into groups of marijuana users and non-users, we believe it appropriate to construe Salazar's motion as one to intervene in a subclass of non-users tested in connection with a periodic physical. Salazar seeks to intervene as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2) and by permission pursuant to Fed.R.Civ.P. 24(b)(2) and 23(d)(2). Since we deem it appropriate to permit Salazar to intervene, we need not consider his motion to intervene as a matter of right.

Rules 23(b)(2) and 23(d)(2) of the Federal Rules of Civil Procedure authorize a court, in its discretion, to permit a person or entity to intervene as a class plaintiff. Rule 24(b)(2) provides, in pertinent part,

> Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 23(b)(2).[10]

■ Deciding a motion to intervene in a class action requires a balancing of interests. On the one hand, the Court must determine if the proposed intervention would strengthen the representation of the class and the prosecution of the class claims. *Montes v. Brezenoff*, 85 F.R.D.

130, 132 (S.D.N.Y.1980); *cf., Stenson v. Blum*, 476 F.Supp. 1331, 1336 (S.D.N.Y. 1979) (quoting *Hurley v. Van Lare*, 365 F.Supp. 186, 196 (S.D.N.Y.1973), *rev'd on other grounds sub nom., Taylor v. Lavine*, 497 F.2d 1208 (2d Cir.1974) (" 'Admitting intervenors *who raise no new issues* and who fall within the class merely clutters the action unnecessarily.' ") (emphasis in original)). Against the benefits to the class must be weighed the extent to which intervention will "delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b)(2). In this instance, the benefits of intervention far outweigh any associated detriments.

■ The facts unique to Salazar's case and the independent legal theories that he seeks to propound provide a reasonable basis for believing that Salazar's representation will markedly benefit much of his subclass. Salazar promises to raise legal arguments that Avent either ignores or deemphasizes. Unlike Avent, Salazar asserts that the TA's failure to obtain a warrant violates his fourth amendment rights. Salazar focuses his due process claim on the reliability of the tests, while such a challenge is peripheral to Avent's due process claim as stated in the complaint. *See Oneida Indian Nation v. New York*, 732 F.2d 261, 266 (2d Cir.1984) (plaintiff's representation of proposed intervenors "should be tested by reference to the pleadings"). Since Salazar appeared at a hearing, he will also be better situated to contest the admissibility of his marijuana-positive test at the hearing.

Both original parties, the named plaintiffs and the defendants, assert that Salazar's intervention will delay the completion of discovery, complicate and prolong the trial because Salazar has demanded a jury, and add new claims to an already complex

---

**10.** Fed.R.Civ.P. 23(d)(2) permits the court to require

> for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the

proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;....

Fed.R.Civ.P. 23(d)(2).

action. Both sides misapprehend the potential dangers. Salazar concedes that, should he be permitted to intervene in this action, he will raise no new causes of action. At worst, Salazar's jury demand creates the prospect of minimal inconvenience associated with picking a jury. Finally, Salazar assures the Court that he will require little additional discovery. The Court will instruct the magistrate supervising this case to ensure his compliance with these assurances. Moreover, since hurdles to class certification remain, additional discovery will not delay the overall progress of this action.

▮ Permitting Salazar to intervene will not delay or prejudice the adjudication of the rights of the original parties, and intervention will further the representation and prosecution of the claims of his subclass. His motion to intervene as a class plaintiff is, therefore, granted.

### III. Conclusion

The plaintiffs' motion for class certification is denied at this time without prejudice to its later renewal. Before the Court will again consider certification, the plaintiffs must redefine the proposed subclasses, address the question of numerosity, and designate any additional subclass representatives. Any proposed subclass may include either those who deny marijuana use during their tenure with the transit authority, or those who acknowledge such use, but not both. A subclass of persons subjected to drug testing in connection with a physical examination for promotion shall include those tested in connection with an appointment to a higher level position in the same or a different department of the transit authority.

Should they wish, the plaintiffs may seek to broaden or combine the subclasses to facilitate representation of all subclass members, but the plaintiffs shall not combine into a single subclass those who acknowledge marijuana use and those who do not. The Court reserves the option of reconsidering any of the subclasses considered herein should the plaintiff alter the structure or representation of those subclasses.

The filing of any supplemental motion for class certification shall await decision of any motions to dismiss the amended complaint. The defendants shall inform the Court within twenty days if and when such a motion will be forthcoming.

James Salazar's motion to intervene as a representative of a subclass of non-marijuana users tested in connection with a routine physical examination is granted.

SO ORDERED.