Thomas BURKA, et al., Plaintiffs,

v.

NEW YORK CITY TRANSIT
AUTHORITY, et al.,
Defendants.

No. 85 Civ. 5751 (GLG).

United States District Court,
S.D. New York.

Aug. 4, 1988.

Legal Action Center of the City of New York, Inc., New York City by Margaret K. Brooks, Noran J. Camp, Ellen M. Weber, for plaintiffs.

General Counsel, New York City Transit Authority, Brooklyn, N.Y. by Albert C. Cosenza, Eugene Freidus, Deborah E. Collins, for defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge:

We have before us plaintiffs' renewed motion for class certification in this action, which arises from defendants' policy of testing current or prospective employees for the use of drugs. We denied plaintiffs' original motion, principally on grounds that the proposed subclasses impermissibly included both those who deny and acknowledge drug use. *Burka v. New York City Transit Auth.*, 110 F.R.D. 595, 602–04, 608 (S.D.N.Y.1986) (*"Burka I"*). Our decision was without prejudice to the motion's later renewal, pending action first on anticipated motions to dismiss the complaint. *Id.* at 608. Those motions, which were subsequently filed, were addressed in this court's opinion of *Burka v. New York City Transit Auth.*, 680 F.Supp. 590 (S.D.N.Y. 1988) (*"Burka II"*).

## I. BACKGROUND

The defendants' drug-testing policy and facts surrounding this case have been sufficiently set forth in *Burka I* and *Burka II*, familiarity with which is presumed. In essence, plaintiffs seek to represent various classes of employees or applicants for positions with the New York City Transit Authority (the "TA"), all of whom have been subjected to adverse employment action by the TA based on drug-positive urinalysis results. The principal contention is that such testing violates federal and state proscriptions against illegal searches and seizures.

Plaintiffs originally sought to represent five subclasses, which largely mirrored the various categories of TA employees or applicants subject to drug testing.[1] As noted above, we denied that original motion, specially recognizing the dichotomy of interests between those who deny drug use and those who acknowledge such use but contend that it does not affect job performance. Although this conflict doomed the original motion, we allowed plaintiffs to resubmit a motion for class certification, specifically noting that, in redefining the subclasses, "[a]ny proposed subclass may include either those who deny marijuana use during their tenure with the transit authority, or those who acknowledge such use, but not both." *Burka I*, 110 F.R.D. at 608.

The renewed motion trims to three the number of proposed subclasses:

1. The TA policy requires drug testing of (1) all job applicants and (2) any employee (a) as part of routine physical examinations, (b) following extended absences or suspensions, (c) as part of an application for promotion, (d) following on-duty incidents, (e) if a controlled substance had been identified in a prior test, or (f) upon suspicion of a supervisor that the individual is impaired due to drug use.

2. These plaintiffs do not seek to represent (1) applicants who admit to drug use, (2) employees (either those who admit or deny drug use) tested due to a supervisor's suspicion, and (3) employees (again, either those who admit or deny drug use) tested because a prior test revealed evidence of drug use.

3. Plaintiff Avent was tested during a routine physical examination. Plaintiff Doe was tested as part of his application for a promotion.

(A) those TA employees who deny drug use but who have been or in the future will be subjected to adverse employment action based on drug-positive test results obtained pursuant to a periodic physical examination, a return-to-work examination, a promotion application, or an on-duty incident ("Subclass A");

(B) those TA employees who admit to off-duty drug use and who have been or in the future will be subjected to adverse employment action due to testing connected with the above activities ("Subclass B"); and

(C) those applicants for positions with the TA who deny drug use and who have been or in the future will be denied employment based on drug-positive test results ("Subclass C").[2]

Plaintiffs Avent, Doe, Devlin, and Arce (who was added as a plaintiff by consent dated July 29, 1986), TA employees who were disciplined following drug testing and all of whom deny drug use, seek to represent Subclass A.[3] Plaintiff Cumberbatch, who was discharged after testing positive for drug use and who admits to off-duty use, seeks to represent Subclass B.[4] Plaintiff Burka, who also was discharged after testing positive but who denies drug use, seeks to represent Subclass C.[5]

## II. DISCUSSION

The general framework governing analysis of class certification under Fed.R.Civ.P. 23 was adequately outlined in *Burka I*, 110

Plaintiff Devlin was tested after his return to work following a five-month suspension. Plaintiff Arce was tested following an on-duty incident (viz, the removal of a woman who was sitting on the subway platform and whose legs were dangling between the platform and the train).

4. Plaintiff Cumberbatch was tested following an on-duty incident (viz, the token booth at which he was working was robbed by an armed assailant).

5. Plaintiff Burka was employed by the TA in an unknown capacity, and was tested pursuant to his application for another position that had become open within the agency.

F.R.D. at 600–01, and need not be reconstructed here. Taking cognizance of those precepts, we turn to the substantive challenges made to the renewed motion. Those challenges focus specifically on two of Rule 23's requirements, to wit, that joinder of individual plaintiffs be impracticable and that the plaintiff-representatives adequately protect the interests of the class.

### a. Rule 23(a)(1)—numerosity/impracticability

■ Rule 23(a)(1) permits class certification only if "the class is so numerous that joinder of all members is impracticable." There is no hard-and-fast rule circumscribing the limits of impracticable joinder. That determination depends upon the facts of the individual case, *DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir.1968), and is thus committed to the sound discretion of the trial court. *Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920, 937 n. 41 (2d Cir.1968).

In an effort to provide some idea of subclass sizes, plaintiffs have analyzed certain employee and applicant files (a limited number of which have been made available by the TA for inspection in this case). Using employee files for the period between 1984–1986, it appears that 258 TA employees were subjected to drug testing under conditions specified in subclasses A and B. Using certain extrapolations, plaintiffs estimate that 219 people from that total would comprise Subclass A, while 39 individuals would comprise Subclass B. As to Subclass C, the files of 805 applicants who tested positive for drug use between October 1984 and December 1985 were examined. Of that sample, 514 applicants specifically denied drug use.[6]

Citing two cases in which numbers well over 300 have been deemed insufficient to satisfy Rule 23(a)(1),[7] defendants argue that plaintiffs have not met their burden in demonstrating the impracticability of joinder.[8] Sheer reliance on a numbers threshold, however, misunderstands the inherently fact-specific nature of inquiry under Rule 23(a)(1). Indeed, it has been suggested that, given the case-by-case approach demanded by an impracticability analysis, "caution should be exercised in relying on a [specific] case as a precedent simply because it involves a class of a particular size." 7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1762, at 188 (1986).[9] Although the numerical size of the putative class or subclass is relevant, it is not dispositive; other factors legitimately bear on the question of impracticability.

In that vein, we note that defendants' records in this case do not always identify among disciplined employees or rejected applicants those who admit or deny drug use; it will be difficult to notify for joinder those who have been discharged by or denied employment with the TA (given the distinct possibility that TA files on these individuals will be outdated); and it would be outright impossible to identify those in the future who may be subjected to similar actions (defendants, as certainly is their right at this time, continue to test employ-

---

**6.** The overwhelming remainder from that sample simply did not indicate whether the applicant denied or admitted drug use.

**7.** *Minersville Coal Co. v. Anthracite Export Assoc.*, 55 F.R.D. 426, 428 (M.D.Pa.1971) (330 members); *State v. American Pipe and Constr. Co.*, 49 F.R.D. 17, 21 (C.D.Cal.1969) (350 members).

**8.** That burden, of course, is the plaintiffs'. *De-Marco*, 390 F.2d at 845.

**9.** To demonstrate the point, and in rebuttal of what might fairly be termed in this context the "anecdotal" citations referenced by defendants, it has been held in this circuit that a number as low as 38 may satisfy the requirements of Rule 23(a)(1). *United States ex rel. Walker v. Mancu-*

*si*, 338 F.Supp. 311, 315–16 (W.D.N.Y.1971). In addition, it should be emphasized that the numerical estimates proffered by plaintiffs in this case are drawn from limited samples and are, therefore, conservative. For example, the lowest of the estimates provided is 39, for Subclass B, but that figure is derived from employee files for only the three-year period between 1984–1986. Files for 1987 were not made available. Adding 13 to the proffered total (one-third of the estimate for the three-year period) as a rough estimate for 1987, the size of Subclass B grows to 52. Further, since, as noted *infra*, plaintiffs seek to represent future claimants as well, the estimates of subclass size must be considered minimum figures.

ees and applicants for drug use, and plaintiffs sue on behalf of, among others, those who may be similarly affected in the future). Concerns of this nature have been held to constitute sufficient grounds for certification under Rule 23(a)(1). *E.g., Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir.1974); *Deary v. Guardian Loan Co.*, 534 F.Supp. 1178, 1190 (S.D.N.Y.1982). Coupled with the numerical estimates proffered by plaintiffs, the above considerations militate in favor of certifying the proposed subclasses. Consequently, if defendants are to defeat the proposed subclasses, it will not be under Rule 23(a)(1).

### b. Rule 23(a)(4)—adequacy of representation

■ Rule 23(a)(4) requires assurance that the class representatives "will fairly and adequately protect the interests of the class." Defendants make various assertions concerning the adequacy of representation to be afforded by certain of the plaintiffs.

They first renew their assertion that plaintiffs Doe, Devlin, and Avent are inadequate class representatives because they pleaded *nolo contendere* in the context of administrative disciplinary proceedings initiated as a result of their drug tests. In our previous decision, we rejected this argument on a number of grounds, explicitly holding that a "plea of *nolo contendere* ... does not bind the named plaintiffs in this proceeding and will not sufficiently detract from the quality of their representation." *Burka I*, 110 F.R.D. at 605. The law of the case on this issue is settled, and we have no reason to retract our earlier holding.

Defendants also challenge the adequacy of plaintiff Arce's representation of Subclass A. Arce's urinalysis was prepared by the Laboratory for Chromatography. It is obliquely suggested in defendants' brief that all due process claims relating to tests done by that lab *may* settle. Hypothetical speculation will not suffice in defeating a plaintiff's class representation. *Robertson*

*v. National Basketball Assoc.*, 389 F.Supp. 867, 899 (S.D.N.Y.1975). It is the plaintiff's status at the time the motion for class certification is made that is relevant. *White v. Mathews*, 559 F.2d 852, 857 (2d Cir.1977), *cert. denied sub nom., Califano v. White*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Of course, any decision on class representation "is not embedded in stone," *Robertson*, 389 F.Supp. at 899, and "special allowance may at times be necessary for claims that evaporate as the suit unfolds." *Mathews*, 559 F.2d at 857. For the present, however, the mere fact that Arce's due process claims *may* settle will not defeat his status as representative of Subclass A.

Finally, defendants challenge the adequacy of plaintiff Burka's representation of Subclass C, which comprises job applicants who deny drug use. They argue that Burka's "status when found to be using marijuana was that of an employee," and that, as an employee, his interests are not coextensive with those of job applicants. This argument fails for two reasons.

First, it is not at all clear to us that Burka's status when he was found to be using drugs was that of an employee. It is true that Burka had a position with the TA. He was tested, however, in connection with his application for a different position with the TA, *supra* note 5. Just as any new job applicant, Burka was required to undergo a drug test consequent to his job application. The fact that he then maintained a position with the TA appears to not have played a role in his testing. The crucial, common factor linking Burka with new job applicants is the job application itself. It is the submission of *a* job application which necessitates testing, and it would appear that Burka is poised to vindicate and adequately represent the interests of anyone tested as a result thereof—regardless of that individual's status at the time of application.

Second, of the remaining claims in this action, outlined at *Burka II*, 680 F.Supp. at 612,[10] the only claim in which the interests of an employee clearly would not coincide

---

**10.** We note that plaintiffs have since repled the liberty claim, and, in a decision on the record in open court, we denied defendants' motion to dismiss that rearticulated cause of action.

with the interests of Subclass C involves the due process claim (viz, that the use of drug-test results, which plaintiffs maintain are obtained by inherently unfair and arbitrary test procedures, fatally infects whatever procedural relief is afforded by the TA). Since, however, job applicants do not have a cognizable property right in the positions they seek, we previously dismissed the due process claims of all job applicants, including Burka. *Id.* at 610, 612. Therefore, although employees and job applicants are in different positions vis a vis the due process claims, that claim is no longer pertinent to plaintiff Burka or the members of Subclass C.

As to the remaining claims applicable to Subclass C—the search-and-seizure, privacy, and liberty claims—it is not clear to us how the interests of plaintiff Burka, as a then employee applying for a different position within the TA, will conflict with those of new job applicants. This point, although generally posited by plaintiffs, was not convincingly supported either in their brief or at oral argument. No specifics as to the allegedly divergent interests have been cited. Consequently, defendants' challenge to Burka's position as representative for Subclass C is denied. As noted above, however, should it become apparent at a later date that Burka cannot adequately represent Subclass B, this court would not hesitate to revisit the issue.

### Conclusion

As we noted in our decision on the original class motion, "[b]y its very nature, this is a class suit involving classwide wrongs [if wrongs they be]." *Burka I,* 110 F.R.D. at 600. None of the grounds put forth by defendants are sufficient at this time to challenge either the proposed composition of the subclasses or their representatives. In addition, the court finds that the remaining requisites of Rule 23(a) have been satisfied, and that, consistent with Rule 23(b), there are legal and factual questions common to subclass members and that a class suit is superior to other means available to try this action. Consequently, plaintiffs'

renewed motion for class certification is granted.

SO ORDERED.