*109 OPINION OF THE COURT
Chief Judge Wachtler.
At 10 o’clock on February 26, 1984, in the Town of Cheektowaga, the Children’s Hospital Telethon was taking place at the Executive Hotel. Defendant was alone in the back seat of a Plymouth Volare parked in the hotel’s lot. Apparently he was arranging something in the trunk, which he reached by removing a portion of the auto’s back seat.
A New York State Trooper on routine patrol noticed defendant, and, his interest piqued by defendant’s motions and the Canadian license plates on the Volare, he decided to investigate further. His suspicion was heightened when defendant ducked down in the back seat as the Trooper approached the car. The Trooper then saw in the trunk, through the space created by the removed back seat, 13 rectangular packages, each approximately 13 inches long and 6 inches wide. This exchange followed, in substance:
"Trooper: What are you doing?
"Defendant: I’m putting packages in the car.
"Trooper: What’s in the packages?
"Defendant: Money.
"Trooper: Money?
"Defendant: Money.
"Trooper: Your money?
"Defendant: No.
"Trooper: Who’s money?
"Defendant: I don’t know.
"Trooper: It’s not your money, and you don’t know whose money it is?
"Defendant: That’s correct.”
The Trooper reached into the car and took one of the packages. He cut it open and saw bills. Suspecting, perhaps, a case of purloined pledges, or some other malfeasance, the Trooper handcuffed defendant, placed him in the patrol car, and brought him to the station. It was later determined that the packages contained $815,000 in cash.
At the station, upon request, defendant relinquished the keys to the Volare’s trunk. Luggage was found in the trunk, and a search of the bags disclosed, among other things, a single Valium tablet, and a few pills of Canadian manufacture allegedly containing codeine. The Troopers also discovered a *110 checkbook, which, along with the $815,000, is the subject of the present appeal. Defendant was charged with two counts of misdemeanor possession of a controlled substance.
Subsequently, defendant was subpoenaed to testify before the Grand Jury regarding the $815,000. He was granted immunity. When questioned about certain entries in the checkbook, defendant responded that they corresponded to money defendant received from his uncle.
The misdemeanor charges against defendant were dismissed. However, he then was indicted for perjury, for allegedly falsely testifying about the checkbook entries. In the perjury prosecution defendant moved to suppress the checkbook and the $815,000, on the ground that it was illegally seized from him. The trial court agreed, and suppressed. The Appellate Division, while also concluding that the arrest was unlawful, nevertheless held that the facts of this case did not warrant suppression, and therefore reversed.
The trial court’s determination that the checkbook and the money were illegally seized from defendant was undisturbed by the Appellate Division, and, finding support in the record, is beyond our further review (see, e.g., People v Jones, 69 NY2d 853, 855). The question then becomes whether these items must be suppressed in this perjury prosecution. We agree with the Appellate Division that they should not be suppressed.
The exclusionary rule’s primary function is deterrence of future unlawful police activity; the rule has never been viewed as a "personal remedial right of a party aggrieved” by the misconduct (People v McGrath, 46 NY2d 12, 21; People v Adams, 53 NY2d 1, 9). This court has long recognized, therefore, that the application and scope of the exclusionary rule is ascertained by balancing the foreseeable deterrent effect against the adverse impact of suppression upon the truth-finding process (see, e.g., People v Harris, 72 NY2d 614, 621-622; People v McGrath, supra, at 21; People v Boodle, 47 NY2d 398, 404). Consequently, we consistently have refused to suppress relevant evidence if little or no deterrent benefit could be anticipated from the exclusion (see, e.g., People v Rogers, 52 NY2d 527, 535; People v Arnau, 58 NY2d 27).
In People v McGrath (supra), these principles were applied in a situation similar to the present one. In that case, following an illegal wiretap by the police, defendant was called to testify before the Grand Jury. Although he was granted immunity, defendant allegedly answered questions evasively, *111 which led to his indictment for criminal contempt. In the contempt prosecution defendant moved to suppress his Grand Jury testimony, as the product of the illegal wiretap. The court first applied attenuation principles, and held that answering evasively before the Grand Jury, after having been granted immunity, "constituted acts sufficiently independent of the illegal wiretap so as to dissipate any taint” flowing from the police misconduct (id., at 28-29). The court then undertook a deterrence analysis, and held that suppression was not warranted due to the insubstantial deterrence benefit realized from excluding immunized Grand Jury testimony in a subsequent contempt prosecution (id., at 21, 29).
In the case now before us defendant argues that People v McGrath (supra), does not apply, because here defendant seeks suppression of the illegally seized objects — the checkbook and the money — while People v McGrath concerned only suppression of Grand Jury testimony, and not the exclusion of the illegal wiretap itself. This distinction does render the attenuation discussion in People v McGrath inapplicable in this case. The People v McGrath deterrence analysis, however, directly applies here, and leads to the conclusion that suppression is not required. Indeed, courts assessing the propriety of suppression in cases substantially identical to the present one have refused to suppress, based upon the lack of deterrent effect (see, United States v Turk, 526 F2d 654; United States v Raftery, 534 F2d 854; see also, 4 LaFave, Search and Seizure § 11.6 [c] [2d ed]).
In United States v Turk (supra), an illegal seizure of an audiotape occurred. Defendant then testified before the Grand Jury, with immunity, at which time he allegedly committed perjury. In the perjury prosecution the court refused to suppress the tape recording, holding that where the defendant was aware of the seizure, and, after being granted immunity, nevertheless testified perjuriously before the Grand Jury, any small deterrent effect could not justify exclusion of the tape to prove perjury. The court reasoned that "[f]or suppression of the tape at the perjury trial to have any significant deterrent effect, we would have to assume that the police could be so confident that an immunized search victim would prevaricate before a grand jury that they would be willing to seize evidence of a crime illegally, and thus to forego the possibility of direct prosecution. We refuse to make such .an assumption” (id., at 667).
*112 United States v Raftery (supra) involved a very similar factual situation, and a largely identical analysis and conclusion. In that case drugs and drug manufacturing equipment were illegally seized from defendant’s home. Defendant was arrested in his bedroom, where some of the seized items were found. After having been granted immunity, defendant testified before the Grand Jury that he had never been in a place in which drugs were manufactured. In his subsequent perjury prosecution, defendant moved to suppress the items seized from his home. The court refused to suppress, stating that "[t]he deterrent effect of excluding the evidence * * * would be minimal”, and concluding that, under the facts of that case, the purpose of the exclusionary rule "would not be served by forbidding the Government from using the evidence to prove the entirely separate offense of perjury before a grand jury” (id., at 857).
In the case now before us defendant obviously knew before testifying before the Grand Jury, with immunity, that his belongings had been searched and that the checkbook and the $815,000 had been found. The illegally seized evidence of course would be subject to suppression in a direct prosecution. It is unreasonable, therefore, to believe that the police, in the future, will jeopardize a direct prosecution in hopes that an immunized defendant, aware that the authorities have discovered evidence to refute his statement, will perjure himself before the Grand Jury. Consequently, we agree that the deterrent effect of suppressing is negligible in this situation, and that exclusion of relevant evidence, therefore, is not warranted. Moreover, excluding this evidence would approach the granting of a "license to commit perjury,” by rendering false statements made before the Grand Jury immune from successful prosecution (see, People v McGrath, supra, at 29). Given the lack of deterrent effect to be gained by suppression here, such a result is unjustified.
We have examined defendant’s remaining contentions, and conclude that they are without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur; Judge Titone taking no part.
Order affirmed.