Thomas BURKA, Eugene Avent, Frank Doe, Tracey Devlin, Fitzgerald Cumberbatch, and Felix Arce, on behalf of themselves and all others similarly situated, Plaintiffs,

James Salazar, Plaintiff–Intervenor,

v.

NEW YORK CITY TRANSIT AUTHORITY, David L. Gunn, individually and in his official capacity as President of the New York City Transit Authority, and his successors in office; Robert F. Kiley, individually and in his official ca-

pacity as Chairman of the New York City Transit Authority, and his successors in office; William I. Buchanan, III, individually and in his official capacity as Assistant Manager of Labor Relations for the New York City Transit Authority, and his successors in office; Richard Mandel, individually and in his official capacity as the Acting Medical Director of the New York City Transit Authority, and his successors in office, Defendants.

John FA, Plaintiff,

v.

NEW YORK CITY TRANSIT AUTHORITY and David L. Gunn, individually and as President of the New York City Transit Authority, Defendants.

Nos. 85 Civ. 5751 (RPP), 89 Civ. 6536 (RPP).

United States District Court, S.D. New York.

Sept. 19, 1990.

As Amended Oct. 3, 1990.

The Legal Action Center of the City of New York, Inc., Margaret K. Brooks, Ellen M. Weber, Edward J. Davis, New York City, for Burka Plaintiffs Class.

Gladstein, Reif & Meginniss, James Reif, New York City, for plaintiff-intervenor James Salazar.

Brooklyn Legal Services Corp. B, Jane Greengold Stevens, Brooklyn, N.Y., for plaintiff John Fa.

New York City Transit Authority, Office of Mr. Albert C. Cosenza, Gen. Counsel, Eugene Freidus, Deborah E. Collins, Brooklyn, N.Y., for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is a consolidation of challenges to the urine testing procedures utilized by the New York City Transit Authority ("TA") since January 1, 1984 to test for use of marijuana.[1] The plaintiffs seek both monetary and equitable relief. During the trial of this case, the Court approved the parties' agreement to bifurcate the issues of liability and remedy. In *Burka v. New York City Transit Authority*, 739 F.Supp. 814 (S.D.N.Y.1990) ("the Opinion and Order of June 5, 1990"), the Court made findings of fact and conclusions of law on the issue of liability. Herein, the Court resolves the major legal disputes impeding the ability of the parties to consent to a remedy order.

### Background

The plaintiffs consist of representatives of three subclasses certified pursuant to Federal Rule of Civil Procedure 23, as well as the individual plaintiff John Fa, and plaintiff-intervenor James Salazar. The plaintiffs were permanent employees, probationary employees or applicants, who

> have been or will be denied employment or a promotion, suspended, required to undergo drug counseling, terminated or otherwise penalized solely because of a marijuana positive urinalysis test.

*Burka v. New York City Transit Authority*, 110 F.R.D. 595, 600 (S.D.N.Y.1986) (Goettel, J.).

The three subclasses, as described by Judge Goettel in his certification decision, are:

(A) those TA employees who deny drug use but who have been or in the future will be subjected to adverse employment action based on drug-positive test results obtained pursuant to a periodic physical examination, a promotion application or an on-duty incident ("Subclass A");

(B) those TA employees who admit to off-duty drug use and who have been or in the future will be subjected to adverse employment action due to testing connected with the above activities ("Subclass B");

(C) those applicants for positions with the TA who deny drug use and who have been or in the future will be denied employment based on drug-positive test results ("Subclass C").

*Burka v. New York City Transit Authority*, 121 F.R.D. 215, 216 (S.D.N.Y.1988). The subclasses, including plaintiff-intervenor Salazar and plaintiff Fa, neither include nor represent either (1) applicants who admit to drug use, (2) employees tested solely due to supervisor's suspicion, or (3) employees tested because a prior test revealed evidence of drug use. *Id.* at 216 n. 2.

The Opinion and Order of June 5, 1990 made findings of fact and conclusions of law as to defendants' liability to plaintiffs under 42 U.S.C. § 1983. The Court concluded that defendants were liable for violation of (1) the procedural due process rights of class members who were permanent employees and were tested between January 1, 1984 and April 1987 and (2) the search and seizure rights of those class members who were tested, between January 1, 1984 and April 1987, when they were either employees with non-safety-sensitive job titles, applicants for non-safety-sensitive job titles, or employees (with non-safety-sensitive job titles) seeking promotion to non-safety-sensitive job titles.

On July 31, 1990, the Court received a proposed remedy order from each side.[2] Defendants' proposed order was accompanied by a memorandum of law. The two proposed orders revealed that the parties had several major legal disputes as to the appropriate form of relief. On August 21, 1990, plaintiffs submitted a memorandum

---

1. This challenge only encompasses individuals who tested positive solely for marijuana. It does not cover individuals who refused to take the test or individuals who tested positive for drugs other than or in addition to marijuana. When the term "drug" is used, unless otherwise specified, the Opinion is referring to marijuana.

2. Counsel for the plaintiff class, plaintiff-intervenor Salazar and plaintiff Fa have consolidated their efforts on the remedies portion of this litigation.

of law and on August 31, 1990, the Court received defendants' reply memorandum. Herein the Court resolves the major legal disputes on the issue of remedies for the Section 1983 violations found in the Opinion.

## Discussion

### I. Unlawful Searches

#### A. *Compensation*

■ Compensation for an unlawful search cannot be obtained unless the constitutional violation caused the harm suffered. *Carey v. Piphus*, 435 U.S. 247, 255, 98 S.Ct. 1042, 1047–48, 55 L.Ed.2d 252 (1978). Courts have permitted awards of compensation for the emotional shock or physical harm caused by an unconstitutional search or seizure. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (emotional damages for unconstitutional search of apartment and arrest); *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (compensation available for harm caused by use of excessive force in violation of Fourth Amendment); *Pastre v. Weber*, 717 F.Supp. 992 (S.D.N.Y.1989) (same). The damages received by plaintiffs in such scenarios were for the immediate and direct impact of the intrusion on the privacy interests protected by the search and seizure clause.[3]

Here, plaintiffs do not claim damages for the harm to their Fourth Amendment privacy interests. Rather than seeking compensation for the harm experienced by being subjected to the intrusiveness of an unlawful taking of urine, plaintiffs seek compensation for the harm they experienced when they were disciplined or denied employment or a promotion. Plaintiffs request back pay and reinstatement for those whose urine was unconstitutionally taken. Defendants have included a provision for reinstatement of those whose Fourth Amendment rights were violated in their proposed order, but argue in their memoranda that plaintiffs are entitled to neither back pay nor reinstatement for the intrusions on their Fourth Amendment rights.

■ The Fourth Amendment does not entitle plaintiffs to compensation for the results of the disciplinary hearings or decisionmaking processes, in which unlawfully obtained evidence was considered. The Fourth Amendment protects privacy interests rather than the property or liberty interests which may be at stake in a disciplinary proceeding or a decisionmaking process. Plaintiffs have cited no cases in which a victim of an unlawful search or seizure was able to recover for loss of wages caused by the use of the unlawfully obtained evidence at a hearing, trial or other government decisionmaking process which had an outcome unfavorable to the victim.[4]

3. None of the plaintiffs were disciplined for refusing to permit the TA to take their urine. The TA concedes that in such a situation an employee would be entitled to back pay, because the TA would be liable for dismissing an employee for his or her failure to comply with an unconstitutional condition (submitting to an unconstitutional search). *See Fiorenzo v. Gunn*, 140 A.D.2d 295, 527 N.Y.S.2d 806 (2d Dept. 1988). Here, the plaintiffs, whose Fourth Amendment rights were violated, were subsequently disciplined for failure to comply with a condition (refraining from using drugs), which has not been challenged by plaintiffs as violative of the Fourth Amendment. *See also Burka*, 739 F.Supp. at 818 (citing *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 1398, 103 L.Ed.2d 685 (1989) (Scalia, J., dissenting) (government "employees can constitutionally be denied promotion, or even be dismissed, for a single instance of unlawful drug use, at home or at work")).

4. Plaintiffs rely on *Jones v. McKenzie*, 628 F.Supp. 1500 (D.D.C.1986), rev'd in part, 833 F.2d 335 (D.C.Cir.1987), vacated sub nom., *Jenkins v. Jones*, — U.S. —, 109 S.Ct. 1633, 104 L.Ed.2d 149, aff'd and amended, 878 F.2d 1476 (D.C.Cir.1989). The district court in *Jones v. McKenzie* granted plaintiff the remedy of back pay and reinstatement after determining (1) that her employer had seized urine from her in violation of the Fourth Amendment *and* (2) that defendants had terminated her from employment by "arbitrary and capricious means." 628 F.Supp. at 1506–07. The finding that plaintiff had been terminated by "arbitrary and capricious means" violated District of Columbia law and therefore the district court did not also have to find that the means of termination violated due process. The parties have not provided the Court with the district court's unpublished remedy order in *Jones v. McKenzie;* however, based upon the Fourth Amendment caselaw discussed herein, it appears that the district

Although the Fourth Amendment's exclusionary rule results in victims of Fourth Amendment violations often receiving additional protection of their property or liberty interests at trials and certain hearings, the exclusionary rule is not derived from the premise that an individual's Fourth Amendment privacy interests would be harmed if unlawfully obtained evidence were to be admitted at trial and relied upon by the factfinder in depriving the individual of property and liberty interests. *See Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 1166, 94 L.Ed.2d 364 (1987) ("the exclusionary rule 'is neither intended or able to "cure the invasion of the defendant's rights which he has already suffered" ' ") (quoting *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984) (quoting *Stone v. Powell,* 428 U.S. 465, 540, 96 S.Ct. 3037, 3074, 49 L.Ed.2d 1067 (1976) (White, J., dissenting))); *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1046, 104 S.Ct. 3479, 3487, 82 L.Ed.2d 778 (1984) ("[t]he exclusionary rule provides no remedy for completed wrongs"); *United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976) (exclusionary rule is not " 'a personal constitutional right of the party aggrieved' ") (quoting *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974)); *United States v. Rea,* 678 F.2d 382, 388 (2d Cir.1982) ("The rule that evidence seized in violation of the Fourth Amendment is inadmissible in a criminal proceeding against the search victim is not intended to, and cannot, repair the injury done to the privacy rights of the victim."). The sole purpose of the exclusionary rule is to deter future unlawful government conduct. *See James v. Illinois,* — U.S. ——, 110 S.Ct. 648, 651 & n. 1, 107 L.Ed.2d 676 (1990); *United States v. Janis,* 428 U.S. at 446, 96

S.Ct. at 3028; *People v. Drain,* 73 N.Y.2d 107, 110, 538 N.Y.S.2d 500, 501, 535 N.E.2d 630 (N.Y.1989).

Accordingly, the Fourth Amendment interests of the person whose Fourth Amendment rights were actually violated are not harmed by the consideration of unlawfully obtained evidence at a trial or hearing, or in a decisionmaking process. *See Illinois v. Krull,* 107 S.Ct. at 1169 (Fourth Amendment permits admission of unlawfully obtained evidence when admission would not further deterrence of unlawful conduct by government officials); *United States v. Leon,* 468 U.S. at 906–908, 104 S.Ct. at 3412–13 (same); *United States v. Janis,* 428 U.S. at 446–47, 96 S.Ct. at 3028–29. The due process clause, rather than the search and seizure clause, protects the interests which are damaged by the TA's imposition of discipline and is the appropriate constitutional provision for providing compensation for such deprivations.[5]

■ Plaintiffs argue, however, that the exclusionary rule applies to the results of tests performed on urine obtained pursuant to unlawful searches and therefore the plaintiffs should be compensated for discipline imposed in reliance on evidence which the search and seizure clause required to have been excluded from consideration. Plaintiffs' contention is without merit because the search and seizure clause does not require the application of the exclusionary rule in the disciplinary proceedings or other employment-related decisionmaking processes, conducted from January 1, 1984 through April 1987. There is neither federal nor New York State caselaw cited which requires that the exclusionary rule be utilized at those disciplinary hearings or decisionmaking processes.

court ordered back pay and reinstatement to remedy the injury caused by depriving Ms. Jones of her employment without fair procedures, rather than to remedy any injury caused by depriving Ms. Jones of her urine without an adequate level of suspicion.

On appeal, the D.C. Circuit did not review the remedy order and reversed the District Court decision to enter a "blanket injunction prohibiting *any* drug testing in the absence of probable cause." 833 F.2d at 339.

5. The Constitution does not protect all interests which are at stake in a government decisionmaking process. The Constitution only protects those interests that constitute "life, liberty or property." *See Burka,* 739 F.Supp. at 833–35 (only the interests of permanent employees at stake in TA decisionmaking processes constitute "property" and "liberty").

Under federal precedent, "'the [Supreme] Court never has applied it [the exclusionary rule] to exclude evidence from a civil proceeding, federal or state.'" *INS v. Lopez–Mendoza*, 468 U.S. at 1041–42, 104 S.Ct. at 3485 (quoting *United States v. Janis* 428 U.S. at 447, 96 S.Ct. at 3028–29). The New York Court of Appeals has extended the exclusionary rule into administrative proceedings to deter "any State agency, charged with enforcement of the law, [from] rely[ing], in fulfilling its function, upon the unlawful and unconstitutional acts of its agents." *Finn's Liquor Shop, Inc. v. State Liquor Authority*, 24 N.Y.2d 647, 301 N.Y.S.2d 584, 249 N.E.2d 440 (N.Y.1969). The TA's function here, however, was "work-related" and not "law enforcement-related," *Burka*, 739 F.Supp. at 826, and therefore *Finn's Liquor* does not require application of the exclusionary rule to disciplinary proceedings and other "work-related" decisionmaking processes. Plaintiffs have cited no instance in which evidence was excluded, under the search and seizure clause, in a "work-related" disciplinary hearing or decisionmaking process.

Furthermore, both federal and New York Courts have refrained from applying the exclusionary rule when the exclusion would have little or no foreseeable deterrent effect on government officials. *See Illinois v. Krull, supra; INS v. Lopez–Mendoza, supra; People v. Drain, supra.* The exclusion of the results of urine tests conducted between three and six years ago would have no foreseeable deterrent effect on present and future TA behavior. The defendants took the urine in good faith adherence to what they believed the Constitution required, *Burka*, 739 F.Supp. at 817, and at a time when it was not even clear under federal or New York State constitutional law that the taking of urine was a "search." *See Molinelli v. Tucker*, 901 F.2d 13, 16 (2d Cir.1990) (no clear federal authority in Second Circuit until 1989 Supreme Court decisions for proposition that the taking of an employee's urine was a "search"); *Patchogue–Medford Teachers Congress v. Board of Education*, 70 N.Y.2d 57, 517 N.Y.S.2d 456, 510 N.E.2d

325 (N.Y.1987) (establishing that urine taking is a "search" in June 1987). Accordingly, there were no willful acts of the TA which should be deterred. *See Illinois v. Krull, supra.* This Court's declaration of legal guidelines in the Opinion of June 5, 1990 and the authority of this Court to enter an injunction, if there appears to be a threat of imminent irreparable harm, are the appropriate means for deterring future unlawful conduct.

Accordingly, any violation of plaintiffs' search and seizure rights does not entitle plaintiffs to compensation, in the form of back pay or reinstatement, for damages caused by the use of urine test results at disciplinary proceedings and in decision-making processes.

### B. *Expungement*

■ The intrusion on privacy interests protected by the Fourth Amendment "results not merely from the taking of the urine sample, but from the information its analysis yields." *Jones v. McKenzie*, 833 F.2d at 340 n. 11. *See Burka*, 739 F.Supp. at 827 n. 9 (citing *Skinner v. Railway Labor Executives Association*, 489 U.S. 602, 109 S.Ct. 1402, 1412, 103 L.Ed.2d 639 (1989) ("[t]he ensuing chemical analysis of the sample ... is a further invasion of the tested employee's privacy interests")). Nevertheless, as those individual privacy interests are construed in the caselaw discussed above, the use of the information obtained in violation of the Fourth Amendment in a disciplinary hearing or in a decisionmaking process, does not intrude on Fourth Amendment interests. In line with this precedent, since the information itself is part of the unconstitutional search, the plaintiffs, whose Fourth Amendment rights were violated, will be entitled to expungement from their records of all information garnered from the unlawful search in order to protect their privacy interests but not entitled to expungement of the results of the disciplinary hearings or "work-related" decisionmaking processes.

## II. Procedural Due Process Violations

### A. *Plaintiffs' Burden*

■ A victim of a violation of procedural due process is guaranteed nominal

damages, *Carey v. Piphus,* 435 U.S. at 267, 98 S.Ct. at 1054 (victims "entitled to recover nominal damages not to exceed one dollar"), but a victim is not entitled to compensation for the deprivation of liberty or property which follows the procedural due process violation unless the liberty or property "deprivation was caused by the violation." *Patterson v. Coughlin,* 905 F.2d 564, 568 (2d Cir.1990) (citing *Carey v. Piphus, supra* ). The Court has found that, following procedures with inadequate due process safeguards, permanent employees suffered liberty and property deprivations in the form of the TA's disciplinary actions. *See Burka,* 739 F.Supp. at 833–43. Plaintiffs, however, are not entitled to back pay, reinstatement or any other form of compensation for those disciplinary actions, if the same discipline would have been imposed even if the TA had provided adequate procedural safeguards.

In the Second Circuit, "the burden is on the plaintiff ... to show that the challenged disciplinary action would not have been taken if he had been" afforded procedural due process. *Patterson v. Coughlin,* 905 F.2d at 568–69. Although this rule is more burdensome on plaintiffs than the rule adopted in the majority of other circuits, *see ibid.* (citing circuits where burden is on defendant), the Second Circuit has eased plaintiffs' burden by adopting the following complementary rule: "[E]ven as to an issue on which the plaintiff normally has the burden of proof, it would be inappropriate to rule that the defendants should prevail where they have made that proof impossible." *Id.* at 570.

The sole bases for the disciplinary actions administered to the plaintiff class were the reports indicating that plaintiffs had tested positive for marijuana use. The Court has found that the positive test reports were not so inherently unreliable as to be inadmissible evidence at a disciplinary hearing. *Burka,* 739 F.Supp. at 838–39. ▪ If, due to defendants' procedural due process violations, however, it is impossible at this time to rebut the reports of positive results, then under the rule of *Patterson v. Coughlin,* the plaintiffs are enti-

tled to compensation. In addition to holding that the test reports were admissible evidence, the Court held that there was a sufficient degree of uncertainty to the correctness of the positive reports that due process required that permanent employees have a meaningful opportunity to disprove the positive reports before being disciplined for marijuana use. *Burka,* 739 F.Supp. at 838–39. To determine whether a finding that an employee was a marijuana user was correct, the finder of fact would have to consider not only the test reports, but also on the evidence offered by a plaintiff to disprove the report. The means for an employee meaningfully to challenge the positive reports are the results of a re-test or an independent test. *Burka,* 739 F.Supp. at 841–43. The defendants' procedures did not provide permanent employees with notice or a real opportunity to employ such means.

Defendants have not preserved the samples and an independent test conducted at this late date would be of no evidentiary value. A conclusion that the positive test reports are correct, would be based not only on the test reports, but also on the silence in the record as to any meaningful evidence that the reports are incorrect. Since the existence of that silence "is the result of the ... violation of ... due process rights," the silence cannot be used to plaintiff's detriment. *Id.* at 569. Defendants' procedural due process violations have prevented plaintiff from being able to meet its burden of proof and therefore it is "inappropriate to rule that the defendants should prevail." *Id.* at 570. Accordingly, permanent employees are entitled to compensation for the discipline resulting from the TA's determination that they used marijuana, based on a positive report of a urine test conducted between January 1, 1984 and April 1987. They are also entitled to expungement from their records of all references to disciplinary sanctions imposed in violation of their procedural due process rights.

**B. *Subclass B***

▪ Those permanent employees who are in Subclass B ("employees who admit

to off-duty drug use") are excluded from this conclusion as to procedural due process compensation. An employee's admission to having used marijuana before the taking of urine is sufficient evidence to convince the Court that the positive test reports were correct and that additional procedural safeguards would not have enabled the employee to avoid disciplinary action. The time at which the employee has made such an admission (i.e., before or after receiving the test results) is not material. Accordingly, permanent employees in Subclass B are only entitled to nominal damages for the due process violations which they suffered. Based on the foregoing reasoning, permanent employees in Subclass B also are not entitled to expungement of references to the sanctions imposed.

Plaintiffs argue that even if the admission is grounds for denying compensation, the admission should not be considered by the Court because in certain instances the admissions to marijuana use were the fruits of unlawful searches. An admission is the fruit of the poisonous tree if the admission is "the product" of the Fourth Amendment violation, *Florida v. Royer*, 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983), and there was not "an intervening act of free will." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Plaintiffs have cited no caselaw in which a statement was found to be the product of an unlawful search. The positive marijuana test result, although a violation of the Fourth Amendment and perhaps disturbing, did not create a context which deprived employees of an intervening opportunity to contemplate whether they should admit to marijuana use or not. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Indeed, all the evidence at trial was that plaintiffs were advised of test results several days after the urine sample was taken. Even if the unlawful searches were part of a chain of events that ended with admissions to marijuana use, those admissions were the products of "intervening acts of free will." Accordingly, the unlawfulness of the searches has no effect on the denial of compensation to Subclass B for due process violations.

## C. *Employees who Failed to Challenge the Urine Test Results*

As to those employees who failed to utilize the procedures offered by the TA for challenging the test results, the Court has already held that the TA is liable to those individuals. *See Burka*, 739 F.Supp. at 844. That holding is based on the principle that a finding of a procedural due process violation is collateral to whether the TA's determination that plaintiffs were marijuana users would have been found to have been a substantively correct decision. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 330-31, 96 S.Ct. 893, 900-01, 47 L.Ed.2d 18 (1976)). The TA denied permanent employees necessary safeguards prior to the commencement of the disciplinary hearings and therefore the failure to contest the test results at the hearings does not eliminate the existence of the defendants' liability for a procedural due process violation.

On the question of remedies for a procedural due process violation, however, the issue of what the substantive results of the hearing would have been is not collateral. However, absent evidence of an admission to marijuana use, there are no grounds for treating the employees who failed to use the hearings differently from those employees who used the hearings without success. There are no grounds for finding that the employees who failed to utilize the hearings after being denied necessary safeguards would not have been able to rebut the reports of positive tests had they been provided with necessary procedural safeguards prior to the commencement of the hearing. Accordingly, a permanent employee's failure to utilize hearings or arbitration proceedings offered by the TA does not justify denying the permanent employee back pay or reinstatement, or expungement of the TA's finding of marijuana use.

### D. Plaintiffs Tested Between January 1, 1984 and September 30, 1984

As to those plaintiffs tested between January 1, 1984 and September 30, 1984 (the LFC subclass), the parties reached a settlement as to what relief those plaintiffs were entitled for their due process claims. The Order on Consent, approved by the Court on February 1, 1990, rendered moot all claims to relief for due process violations by plaintiffs tested between January 1, 1984 and September 30, 1984. *See Burka*, 739 F.Supp. at 836 n. 15. Accordingly, the LFC subclass is not entitled to any additional relief for due process violations.

### E. Permanent Employees Disciplined For Refusing to Undergo Drug Counseling

The penalty imposed by the TA on some permanent employees for findings of marijuana use was a requirement to enter a drug counseling program rather than suspension or termination. Some of those permanent employees refused to undergo drug counseling and were then terminated or suspended. There is an issue as to whether those employees who were terminated or suspended for refusing to undergo drug counseling are entitled to compensation for their termination or suspension.

 Defendants argue that there is an insufficient causal connection between the denial of procedural due process and a penalty for refusing to undergo drug counseling. However, those employees were entitled to refuse to submit to drug counseling because the drug counseling requirement was being imposed as a direct result of a violation of their due process rights. Under those circumstances, an unconstitutional condition was being imposed on their employment. *See Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (state may not deny an individual unemployment benefits because that individual refuses to comply with a condition which violates First Amendment); *Frost v. Railroad Commission*, 271 U.S. 583, 593–99, 46 S.Ct. 605, 607–09, 70 L.Ed. 1101 (1926) ("state is without power to impose an unconstitutional requirement as a condition for granting a privilege"). The N.Y. Civil Service Law § 75 only permits discipline of permanent employees for "incompetence or misconduct." If "misconduct" included failure to comply with an unconstitutional condition of employment, then the N.Y. Civil Service Law would have to be declared unconstitutional. Under the rule of *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), the Court construes N.Y. Civil Service Law § 75 to exclude such a refusal from the scope of the term "misconduct." Accordingly, permanent employees in the plaintiff class are entitled to compensation for terminations or suspensions imposed for failure to comply with a sanction (such as entering a drug counseling program) imposed as a result of a violation of their due process rights. They are also entitled to expungement from their records of all references to their refusal to undergo drug counseling and consequent penalties.

### F. Constructively Terminated Employees

Based on the statement of the law in the Court's Opinion and Order of January 22, 1985 in this case, permanent employees who were constructively terminated, as defined in that earlier Opinion and Order, are to entitled to the same remedies as permanent employees who were subject to *de facto* termination.

### G. Employees Tested After September 30, 1986

The Court has made no findings of fact as to those permanent employees tested after April 1987. The Court has found that the defendants satisfied the procedural due process rights of employees tested between October 1, 1986 and April 1987. Accordingly, plaintiff's argument that permanent employees tested after September 30, 1986 are entitled to relief is without merit insofar as it seeks relief for due process violations committed between October 1, 1986 and April 1987.

III. Employees Disciplined for a Positive Test Result Following an Unconstitutional Finding of Marijuana Use

Certain employees were not terminated because of the unconstitutional finding of marijuana use; however, those employees were then placed on a list of employees subject to random drug testing. As a result of those random tests, some employees suffered penalties such as termination. Plaintiffs argue that those employees are entitled to relief for the deprivations they suffered as a result of the random drug tests, because they would not have been subject to the random tests but for the initial unconstitutional finding.

Plaintiffs' contention is without merit. If the random tests and marijuana use findings conformed with constitutional safeguards then plaintiffs are not entitled to compensation for the penalties consequently imposed by the TA. Plaintiffs do not include in these lawsuits any class of employees tested because of a prior drug use finding (even if that prior drug use finding was unconstitutional). Accordingly, employees who were tested because of a prior drug use finding are not entitled to compensation, even if that prior drug use finding has been held to have been unconstitutional.

IV. Proportional Recovery

The parties also dispute whether proportional or individualized recovery of damages is appropriate. Based on the holdings already made, this issue is narrowed to consideration of the appropriate way of computing compensation for permanent employees for deprivations following the TA's conclusions that they had engaged in the misconduct of using marijuana. The plaintiffs request compensation for permanent employees who were either terminated, suspended or denied promotions following the determination that they were users of marijuana. The computation of compensation for a termination or a suspension is straightforward and does not require the implementation of proportional relief.

■ Proportional recovery should be used to determine the relief to which permanent employees denied promotion are entitled. A variety of factors determine whether a permanent employee, who is qualified for a promotion, will receive a promotion. Even if an employee passes the drug test, there is no guarantee that he or she will be promoted when there are other qualified employees seeking the same promotion. Therefore the most equitable means for determining compensation for permanent employees denied promotions is proportional recovery. Under a system of proportional recovery, an otherwise qualified permanent employee denied a promotion, due to a marijuana use finding, does not receive compensation as if he had been promoted. Instead, the parties must determine what that employee's chances of being promoted were. The employees' chances will be determined by dividing the number of openings by the size of the qualified applicant pool. Compensation as if the employee had been promoted is then multiplied by the employee's chances (e.g., 50 percent if he were one of two applicants) of having received the promotion had he passed the drug test.

V. Pre–Judgment Interest

■ Plaintiffs concede that "compensatory principles 'must be tempered by an assessment of the equities.'" Pl.Br. at 49 (quoting *Local 743 and 1746 v. United Aircraft*, 534 F.2d 422, 447 (2d Cir.1975) and that resolution of the issue of pre-judgment interest is a matter of judicial discretion. *See United Aircraft*, 534 F.2d at 446–47. A denial of pre-judgment interest to plaintiffs would not interfere with *Carey v. Piphus's* mandate that plaintiffs receive "'meaningful compensation,'" 435 U.S. at 259, 98 S.Ct. at 1050 (quoting *Bivens*, 403 U.S. at 409, 91 S.Ct. at 2011), and would serve important equitable considerations.

Caselaw permits pre-judgment interest to be subject to judicial discretion because it is not absolutely necessary for meaningful compensation. As evidenced by the absence of a provision for interest in the terms of compensation for terminated and suspended LFC subclass members in the Order on Consent of February 1, 1990,

pre-judgment interest is not necessary to meaningfully compensate plaintiffs in this case.

The TA's unconstitutional treatment of plaintiffs has not enabled it to attain any financial benefits to which plaintiffs would have an equitable claim of entitlement. Moreover, the TA is a public corporation designed to provide public transportation, a basic necessity of all members of the community. Finally, there would be no deterrent value to requiring pre-judgment interest because there is no evidence that defendants acted willfully or in bad faith in committing constitutional violations. Indeed, the evidence is to the contrary that in structuring its drug testing program the TA attempted to invoke constitutional safeguards for its employees. Accordingly, the plaintiffs request for pre-judgment interest is denied.

## VI. Injunctive Relief

Defendants' violations occurred between three and six years ago and did not evidence a disregard for what reasonably appeared to be constitutional requirements at that time. In the Opinion and Order of June 5, 1990, the Court set forth guidelines for compliance with the due process clause and the search and seizure clause. There is no grounds for finding that defendants will not attempt to comply reasonably with the principles set forth in the Opinion and Order of June 5, 1990. Nor is there a danger of imminent irreparable harm to plaintiffs.

If the Court were to promulgate standard operating procedures for the TA to follow in the future, as the plaintiffs' requested injunction would do, then the Court would become in effect an administrative agency rather than a judicial body whose role is to make findings of fact and set forth the law and its boundaries. At this point, it is worth reiterating a passage from the *Opinion and Order of June 5, 1990*:

> [T]he Court refrains from promulgating a code of administrative procedure for the TA. *See Wheeler v. Montgomery,* 397 U.S. 280, 283 [90 S.Ct. 1026, 1028, 25

L.Ed.2d 307] (1970) (Burger, C.J., dissenting) (Courts should "allow evolutionary procedures at various administrative levels to develop, given their flexibility to make adjustments. This would permit orderly development of procedural solutions, aided as they would be by expert guidance available within" agencies.); *see also* Friendly, " 'Some Kind of Hearing,' " 123 U.Pa.L.Rev. 1267, 1302–03 (1975) ("One can readily imagine how different administrative codes would be as written by each of the twenty-seven judges of the Southern District of New York; much would depend on the luck of the draw.... This process would be painfully lengthy and indirect, and future code amendments from new perceptions or reevaluations would be most difficult to make.").

*Burka,* 739 F.Supp. at 843. Based on the foregoing reasoning, the request for injunctive relief is denied.

## VII. Arbitration

The parties have not been able to agree on a means for resolving factual disputes which may arise during the compensation process. In light of the rulings herein, it should be easier to perceive what types of disputes may arise and therefore make it easier to agree on a system. The Court notes that it will not sign an order which gives the plaintiffs free run of the Courthouse to resolve all disputes that arise in dispensing compensation. Respect for the judicial economy and the desirability of private efficiency dictate in favor of agreement to a private arbitration scheme or, failing that, the use of a magistrate. The parties are to submit an order proposing system for resolution of factual disputes related to the dispensation of relief by October 15, 1990.

## VIII. Other Disputed Issues

This Opinion does not address every dispute between the parties brought to its attention. There are still minor matters of dispute, such as the means of notifying members of the plaintiff class of their eligibility for compensation. The parties should be able to resolve these basic admin-

istrative matters of remedy without the necessity of a judicial opinion. Counsel for all parties have been litigating against each other in this matter for several years and communication between counsel should be at a much higher level of professionalism than it is at present. The Court warns counsel for all parties that it will look with disfavor upon any conduct by either side which causes excess hours to be spent on matters which could have been more efficiently resolved by counsel exercising a degree of professionalism expected of attorneys appearing before this Court. The parties are to submit a joint remedy order in accordance with the rulings in this Opinion by October 15, 1990.

IX. Amendments to the Opinion and Order of June 5, 1990

There have been proposals for minor amendments to the Opinion and Order of June 5, 1990, to which all parties have voiced their consent either in open court or in correspondence. Stipulations containing amendments to the Opinion and Order of June 5, 1990 are to be submitted for the Court's signature by no later than September 30, 1990.

IT IS SO ORDERED.