In the Matter of JON C. BOYD, Petitioner, v THOMAS A. CONSTANTINE, as Superintendent of New York State Police, Respondent.

Fourth Department, June 5, 1992

## APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria (John Collins* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Patrick O. McCormack* of counsel), for respondent.

**OPINION OF THE COURT**

GREEN, J.

We are here presented with the question whether evidence that is the product of an unlawful search and suppressed for criminal prosecution purposes may be used in an administrative disciplinary proceeding. The matter comes before us in a CPLR article 78 proceeding seeking to annul a determination dismissing petitioner from the Division of State Police.

At approximately 2:30 A.M., two City of Buffalo police officers on routine patrol drove into the rear parking lot of 307 North Street and noticed movement inside a parked car that had not been there earlier. Upon closer inspection, the officers saw petitioner, an off-duty New York State Police Trooper, and another man inside petitioner's car, and ordered them to get out. The car was searched and a small plastic baggie of marihuana was found inside the console. Petitioner identified himself as a State Trooper and stated that the marihuana belonged to his girlfriend who lived with him. An appearance ticket was issued charging petitioner with unlawful possession of marihuana pursuant to Penal Law § 221.05. Petitioner's superiors were also advised of the charge and commenced a disciplinary proceeding against him before a State Police Hearing Board. Petitioner was charged with violating State Police regulations by knowingly and unlawfully possessing marihuana and by acting in a manner tending to bring discredit upon the State Police. Petitioner denied the charges. Before the hearing was held, Buffalo City Court granted petitioner's motion to suppress the marihuana and dismissed the charge against him.

At the administrative hearing, petitioner objected to the admission of the marihuana and to any testimony concerning it. Stating that he was aware of conflicting authority on the issue, the Hearing Officer overruled the objection. Petitioner testified at the hearing that the marihuana belonged to his girlfriend, who had been using the car earlier that day, and that he did not know it was in the car. His testimony was corroborated by his girlfriend. The Hearing Board concluded that their testimony was not credible, found petitioner guilty of all charges and recommended that he be dismissed. Respondent, Thomas A. Constantine, accepted the Board's findings

and recommendation and dismissed petitioner, who then commenced this article 78 proceeding.

We annul the determination because it is based upon evidence obtained through an illegal search and seizure. The exclusionary rule applies to administrative as well as to criminal proceedings, and the fruits of an illegal search may not be used to support the imposition of civil penalties *(see, People ex rel. Piccarillo v New York State Bd. of Parole,* 48 NY2d 76, 81-83; *People v McGrath,* 46 NY2d 12, 21, *cert denied* 440 US 972; *Matter of Finn's Liq. Shop v State Liq. Auth.,* 24 NY2d 647, 661-663, *cert denied* 396 US 840; *People ex rel. Coldwell v New York State Div. of Parole,* 123 AD2d 458; *Matter of Gaglia v Starr,* 59 AD2d 839; *Matter of McPherson v New York City Hous. Auth.,* 47 AD2d 828; *Matter of Leogrande v State Liq. Auth.,* 25 AD2d 225, 231-232, *revd on other grounds* 19 NY2d 418). In particular, the exclusionary rule proscribes the use of evidence illegally obtained by local police in employment-related disciplinary proceedings *(see, Matter of McPherson v New York City Hous. Auth., supra).*

The extension of the exclusionary rule to administrative proceedings does not depend upon the "quasi-criminal nature" of the proceeding at issue or upon any showing that the purpose of the police search and the purpose of the subsequent civil proceeding were related. In *Piccarillo* the Court of Appeals clearly expressed the "simple and direct" rationale for applying the exclusionary rule to administrative proceedings: " 'To the extent that the State, or its agents, can bypass the deterrent effect of the exclusionary rule by using the fruits of an illegal search in a "civil" or "administrative" proceeding, the incentive for enforcement and investigative personnel to exceed constitutional limitations on their activity remains and the effectiveness of the rule as a deterrent is diminished.' " *(People ex rel. Piccarillo v New York State Bd. of Parole,* 48 NY2d, *supra,* at 81, quoting *Matter of Finn's Liq. Shop v State Liq. Auth.,* 24 NY2d, *supra,* at 653.)

The claim that application of the exclusionary rule to this proceeding would have little deterrent benefit is directly at odds with the rationale of *Piccarillo (supra).* The Court of Appeals, in reaffirming *Piccarillo,* explained that the exclusionary rule was extended to that proceeding "because we reasoned that the deterrent effect of the rule would be compromised if illegally obtained evidence could be used at an administrative hearing" *(People ex rel. Matthews v New York State Div. of Parole,* 58 NY2d 196, 203). In *Piccarillo,* more-

over, the court expressly declined to follow decisions from other jurisdictions holding that the exclusionary rule need not be applied to parole or probation revocation hearings on the ground that exclusion would have little deterrent effect (48 NY2d, *supra,* at 81, n 6, citing *United States ex rel. Sperling v Fitzpatrick,* 426 F2d 1161; *Matter of Martinez,* 1 Cal 3d 641, 463 P2d 734, *cert denied* 400 US 851; *United States v Vandemark,* 522 F2d 1019; *United States v Farmer,* 512 F2d 160, *cert denied* 423 US 987).

*People v McGrath* (46 NY2d 12, 21, *cert denied* 440 US 972, *supra)* and *People v Drain* (73 NY2d 107, 110) do not justify a departure from the settled rule that illegally seized evidence may not be used in an administrative proceeding. In both cases the Court of Appeals reaffirmed the principle that evidence obtained illegally is subject to suppression in a criminal prosecution or in a civil disciplinary proceeding where the challenged evidence supplies direct proof of the underlying crime or violation *(People v Drain, supra,* at 112; *People v McGrath, supra,* at 21, 31). The court simply held that the illegally seized evidence could subsequently be used to prove the entirely separate offense of perjury, because the deterrent effect of exclusion was negligible and because exclusion would amount to granting "a 'license to commit perjury' " *(People v Drain, supra,* at 112; *People v McGrath, supra,* at 29). These considerations are not present in this proceeding.

The supposition that courts of other jurisdictions, particularly the Federal courts, might decline to apply the exclusionary rule in this proceeding is not persuasive. If there is a conflict between the lower Federal courts and the New York Court of Appeals, we are bound by the rulings of our highest court *(see, United States ex rel. Lawrence v Woods,* 432 F2d 1072, *cert denied* 402 US 983; *New York R. T. Corp. v City of New York,* 275 NY 258, 265, *affd* 303 US 573). While the Federal courts may decline to apply the exclusionary rule in an employment-related disciplinary proceeding *(see, Burka v New York City Tr. Auth.,* 747 F Supp 214), we are constrained to follow the consistent, unequivocal holdings of the Court of Appeals prohibiting the use of illegally obtained evidence in administrative proceedings.

In relying on the decisions of other jurisdictions, the dissent overlooks the fact that the application of the exclusionary rule to administrative proceedings rests largely upon our State Constitution and State policy *(see, Matter of Patchogue-Med-*

*ford Congress of Teachers v Board of Educ.,* 70 NY2d 57, 66; *People ex rel. Piccarillo v New York State Bd. of Parole,* 48 NY2d, *supra,* at 82-83). As the court observed in *Piccarillo,* the "holding that the exclusionary rule proscribes the use of illegally seized evidence at [an administrative] hearing is predicated both upon the recognition that [the] right to be free from unreasonable searches and seizures, guaranteed by both Federal and State Constitutions, remains inviolate and upon the well-established policy in this State prohibiting the use of illegally seized evidence at an administrative proceeding when such evidence is determined by a court to be unavailable in a criminal action" (48 NY2d, *supra,* at 83).

In applying State constitutional standards, the Court of Appeals has repeatedly emphasized the values of predictability and precision in search and seizure cases *(see, People v Keta,* 79 NY2d 474; *People v Torres,* 74 NY2d 224, 228; *People v Griminger,* 71 NY2d 635, 640; *People v Hicks,* 68 NY2d 234, 244; *People v Johnson,* 66 NY2d 398, 407) and the need to provide and maintain " 'bright line' " rules to guide judicial review *(People v P. J. Video,* 68 NY2d 296, 305, *cert denied* 479 US 1091). The rule against the use of illegally obtained evidence in administrative proceedings is clear and easily applied. In its place the dissent would require a case-by-case inquiry into the purpose of the search, the relationship between the agency seizing the evidence and the agency seeking to use the evidence and the level of egregiousness of the unlawful government conduct. Since a court would have already determined that the evidence may not be used in a criminal action, the inquiry must necessarily be conducted by an administrative agency forced to reach far beyond its area of expertise to a complex area of constitutional law.

Accordingly, the determination dismissing petitioner from the Division of State Police should be annulled.

Boehm, J. (dissenting). We respectfully dissent. While we acknowledge the general principle that the exclusionary rule is applicable to civil proceedings *(People ex rel. Piccarillo v New York State Bd. of Parole,* 48 NY2d 76; *Matter of Finn's Liq. Shop v State Liq. Auth.,* 24 NY2d 647, *cert denied* 396 US 840), we disagree with the majority's conclusion that there is an absolute prohibition against admitting illegally obtained evidence in disciplinary proceedings like the one considered here.

Whereas the ban against using evidence unlawfully ob-

tained in parole revocation proceedings has remained unchanged because of the quasi-criminal nature of such a proceeding and because of the important liberty interest involved *(see, People ex rel. Piccarillo v New York State Bd. of Parole, supra; People ex rel. Coldwell v New York State Div. of Parole,* 123 AD2d 458), the ban imposed in *Matter of Finn's Liq. Shop* against the use of unlawfully obtained evidence in civil proceedings has, over the years, become mitigated and less absolute.

Application of the exclusionary rule in civil proceedings is now dependent upon a number of factors, utilized on a case-by-case basis. Despite New York's traditional expansion of Fourth Amendment rights beyond those accorded by the Federal Constitution *(see, People v P. J. Video,* 68 NY2d 296, *cert denied* 479 US 1091), the principles laid down by the Court of Appeals in this area have been consistent with those established by the Supreme Court, and we are today guided by the similar rules which have emerged from both courts.

One of the justifications for the exclusionary rule was enunciated in *Elkino v United States* (364 US 206, 222) as being the "imperative of judicial integrity". In 1974, however, the Supreme Court declared that the prime if not the only purpose of the exclusionary rule "is to deter future unlawful police conduct" *(United States v Calandra,* 414 US 338, 347). It emphasized that the exclusionary rule is not a personal constitutional right, but, rather, "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect" *(United States v Calandra, supra,* at 348; *see also, United States v Janis,* 428 US 433; *United States v Peltier,* 422 US 531).

That reason for the rule has been adopted by the Court of Appeals in *People v McGrath* (46 NY2d 12, 21, *cert denied* 440 US 972) where the court observed that the rule has never been viewed as a "personal remedial right of a party aggrieved", and again in *People v Drain* (73 NY2d 107, 110), where the court said that it consistently has "refused to suppress relevant evidence if little or no deterrent benefit could be anticipated from the exclusion". The majority reads *People v McGrath (supra)* and *People v Drain (supra)* to suspend the exclusionary rule ·and allow the use of illegally seized evidence in civil proceedings only when exclusion would invite perjury. In our view, and in light of the broad language employed by the court, those decisions merely illustrate that

whether the exclusionary rule applies is fact specific and should be determined case by case.

Because the law enforcement officials here have already been deterred by the suppression in City Court of the evidence they illegally seized, thereby prohibiting its use to obtain a criminal conviction, the primary question for consideration is whether there would be some significant secondary deterrence in prohibiting the use of the marihuana in the State Police hearing, involving only intra-agency discipline.

There is no showing that the purpose of the original police search and the purpose of the subsequent civil proceeding are related. It cannot be said that the use of the evidence in the civil proceeding was within the predictable contemplation of the Buffalo police officers, or that it was likely to have motivated them. Applying this standard, the Court of Appeals for the Second Circuit held that evidence seized by Federal narcotics agents, and then suppressed, was not barred in a subsequent Federal civil tax proceeding where the evidence was not seized with the participation or collusion of the IRS agents, nor seized in contemplation of use by them *(Tirado v Commissioner of Internal Revenue,* 689 F2d 307, *cert denied* 460 US 1014; *see also,* Note, *Admissibility of Illegally Seized Evidence in Subsequent Civil Proceedings: Focusing on Motive to Determine Deterrence,* 51 Fordham L Rev 1019 [1982-1983]).

We would apply the same rationale here. The Buffalo police officers could not possibly have had an interest in whether the employment of the petitioner should be continued as a State Trooper when they first commenced their search. They did not know initially that petitioner was a State Trooper. A disciplinary proceeding involving petitioner was hardly within the police officers' contemplation, or "zone of primary interest" *(United States v Janis, supra,* at 458), and the civil secondary proceeding was outside any reasonable degree of their apprehension.

There is nothing in the record to indicate that the police made the search for any purpose other than to determine if a crime was then being committed, nor is there any showing that there was an agreement, arrangement or understanding between the Buffalo police and the State Police whereby they cooperated in seeking out delinquent law enforcement officers. In the absence of such a direct or subsidiary relationship between them, the transfer of the evidence from the Buffalo police to the State Police was an acceptable inter-sovereign transaction.

Accordingly, it would serve neither the primary purpose of deterrence nor any significant secondary deterrent purpose to prohibit the use of the evidence in the State Police disciplinary hearing. The realistic prospects of achieving even marginal deterrence by prohibiting its use would be minimal, or nonexistent.

Were we to make the analysis by balancing the potential benefit of invoking the exclusionary rule against the potential burden *(see, United States v Calandra,* 414 US 338, *supra; People v Drain,* 73 NY2d 107, *supra),* the result would be the same. A primary consideration in a cost/benefit analysis is whether the burden imposed on society would outweigh the benefit to be derived by the application of the rule in this administrative hearing.

Thus, the exclusionary rule has been held not to apply to a child protective proceeding, because of the State's overwhelming interest in protecting the best interests and safety of minors *(Matter of Diane P.,* 110 AD2d 354, *appeal dismissed* 67 NY2d 918); a police department disciplinary proceeding, involving an occupation "of high public interest and trust" *(Roman v McGuire,* 123 Misc 2d 1027, 1029); and Grand Jury proceedings because of their important societal functions *(United States v Calandra, supra).*

The same balancing test has been applied in other courts as well *(e.g., Garrett v Lehman,* 751 F2d 997 [military administrative discharge proceeding against serviceman using and possessing marihuana on military base]; *Emslie v State Bar,* 11 Cal 3d 210, 520 P2d 991; *People v Harfmann,* 638 P2d 745, 747 [Colo] [attorney disciplinary proceedings, "to protect the public and the legal profession from unscrupulous lawyers"]; *Governing Bd. v Metcalf,* 36 Cal App 3d 546, 111 Cal Rptr 724 [proceedings to discharge teacher for immoral conduct]; *Pullin v Louisiana State Racing Commn.,* 484 So 2d 105 [La] [suspension proceedings against owner and trainer of horses]; *see also,* 1 LaFave, Search and Seizure § 1.7 [e] [2d ed]).

It is not necessary to belabor the great importance of maintaining public trust and confidence in law enforcement institutions and their representatives. There is a societal and institutional tremor that is felt when a guardian of the law is found violating the law. Absent egregious police conduct in obtaining the disputed evidence, the beneficial purpose of the exclusionary rule is far outweighed by the cost in excluding the evidence in this administrative proceeding. The Hearing

Officer, therefore, was correct in admitting the marihuana and the circumstances of its seizure into evidence.

Petitioner's contention that the determination must be annulled because there is no substantial evidence that he knowingly possessed the marihuana is also without merit. The Board's finding that petitioner knowingly possessed the marihuana is consistent with the statutory rule that "[t]he presence of a controlled substance in an automobile * * * is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found" (Penal Law § 220.25 [1]; *see also, People v Reisman,* 29 NY2d 278, *cert denied* 405 US 1041). Although petitioner denied knowing that the marihuana was in his car, it is for the Board, and not for this court, to weigh the conflicting inferences and to assess the credibility of witnesses *(see, Matter of Silberfarb v Board of Coop. Educ. Servs.,* 60 NY2d 979; *see also, Matter of Berenhaus v Ward,* 70 NY2d 436).

Lastly, we reject petitioner's contention that the determination to dismiss him should be annulled because the penalty is so disproportionate to the offense that it is shocking to one's sense of fairness *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222). Recently, in *Trotta v Ward* (77 NY2d 827) the dismissal of a police officer after he tested positive for marihuana use was confirmed. There, the Court of Appeals observed that such disciplinary determinations are entitled to substantial deference because the Police Commissioner or, in this case, the Superintendent, " 'and not the courts, is accountable to the public for the integrity of the Department' " *(Trotta v Ward, supra,* at 828, quoting *Matter of Berenhaus v Ward,* 70 NY2d 436, 445, *supra).* There is no reason to reach a contrary conclusion here.

DENMAN, P. J., and FALLON, J., concur with GREEN, J.; BOEHM, J., dissents and votes to confirm in a separate opinion in which BALIO, J., concurs.

Determination annulled, on the law, without costs, and petition granted in accordance with the opinion by GREEN, J.